IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Jane Doe S.W., | ) | Case No. 2:19-CV-1194 |
| | ) | |
| Plaintiff, | ) | Judge Algenon L. Marbley |
| | ) | |
| vs. | ) | Magistrate Judge Elizabeth Preston Deavers |
| | ) | |
| Lorain-Elyria Motel, Inc., *et al.*, | ) | **DEFENDANT LORAIN-ELYRIA MOTEL, INC. DBA BEST WESTERN INN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| Defendants. | ) | |
| | ) | |
| | ) | or, in the alternative, |
| | ) | |
| | ) | **MOTION TO DISMISS OR TRANSFER DUE TO IMPROPER VENUE** |

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Lorain-Elyria Motel, Inc. dba Best Western Inn moves to dismiss Plaintiff's complaint for failure to state a claim on which relief can be granted. Alternatively, venue in this district is improper under Rule 12(b)(3), warranting dismissal of this case or, alternatively, transfer to the Northern District of Ohio.

The grounds for this motion are explained in the memorandum in support filed herewith.

Respectfully submitted,

*/s/ John R. Chlysta*
Kenneth A. Calderone (0046860)
John R. Chlysta (0059313)
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, OH  44333
Telephone:  (330) 670-7324 / (330) 670-7305
Facsimile:   (330) 670-7440 / (330) 670-7442
Email:  kcalderone@hcplaw.net
            jchlysta@hcplaw.net

## CERTIFICATE OF SERVICE

  This document was filed on August 26, 2019, using the court's CM/ECF system, which will send notification of such filing to all parties. Parties may access this document through the Court's electronic filing system. Copies of this filing were mailed to the parties not on the Court's electronic filing system.

              /s/ John R. Chlysta

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Jane Doe S.W., | ) | Case No. 2:19-CV-1194 |
| | ) | |
| Plaintiff, | ) | Judge Algenon L. Marbley |
| | ) | |
| vs. | ) | Magistrate Judge Elizabeth Preston Deavers |
| | ) | |
| Lorain-Elyria Motel, Inc., *et al.*, | ) | **DEFENDANT LORAIN-ELYRIA MOTEL,** |
| | ) | **INC. DBA BEST WESTERN INN'S** |
| Defendants. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS PLAINTIFF'S** |
| | ) | **COMPLAINT OR, ALTERNATIVELY, TO** |
| | ) | **TRANSFER CASE** |

### I.   INTRODUCTION

Plaintiff alleges that she was a victim of sex trafficking at three different locations, including the Lorain-Elyria Motel ("LEM"). However, Plaintiff's complaint fails to state a plausible, viable claim against LEM.

Critical to LEM's motion is the fact that LEM and co-defendant Best Western International, Inc. are separate and distinct entities. As explained in Best Western's motion to dismiss (Doc. #29), Best Western is a corporation headquartered in Arizona. (Doc. #29, p. 2). Best Western is a franchisor; LEM is a franchisee. Best Western doesn't maintain an office in Ohio, have bank accounts in Ohio, or own any property in Ohio. *Id*. at 6. Best Western does not and did not own LEM, control LEM's daily operations, or employ any staff at LEM. *Id*. at 7. LEM is its own entity, separate and apart from Best Western.

This fact is key because one section of Plaintiff's complaint is devoted to "factual" allegations against Best Western and LEM—paragraphs 58 to 79. There, Plaintiff incorrectly conflates Best Western and LEM so as to impute to LEM knowledge of potential sex trafficking incidents from different Best Western-branded locations simply because LEM is a Best Western

franchisee. Specifically, Plaintiff's allegations of trafficking at Best Western hotels in Oregon, Massachusetts, California, Tennessee, Maryland, Virginia, and New Hampshire are all incidents that allegedly occurred at facilities that have no relationship to LEM, an independent franchisee. (Compl. ¶¶ 68-75). Similarly, Plaintiff's allegations of negative online reviews regarding Best Western locations in Florida, Texas, Louisiana, and New Jersey pertain to locations *other* than LEM, a separately owned and operated franchisee. (Compl. ¶76).

Once Plaintiff's allegations of trafficking incidents at other Best Western-branded locations *except* LEM are stripped away, the complaint is simply a barebones recitation of conclusory allegations and legal conclusions about what Plaintiff believes LEM should or should not have done. Plaintiff fails to plead any specific allegations of LEM acts or omissions that rise above the level of speculation. Accordingly, the complaint fails to state a claim on which relief can be granted. Alternatively, venue in this district is improper, thus warranting a dismissal or, alternatively, a transfer to the Northern District of Ohio, where the alleged trafficking occurred and where the parties, witnesses, and evidence are located.

## II.  LAW & ARGUMENT

### A. Plaintiff fails to state a claim on which relief can be granted

#### 1. The Legal Standard

A court should dismiss a suit for failure to state a claim if the complaint doesn't provide fair notice of the claim and doesn't state factual allegations showing that a right to relief is plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007). While a court must construe the complaint in a light most favorable to the plaintiff, a claim must be supported by factual allegations such that it is "plausible on its face." A claim is facially plausible "when the plaintiff pleads factual content that allows the

2

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Flex Homes, Inc. v. Ritz-Craft Corp. of Michigan, Inc.*, 721 F. Supp.2d 663, 670–71 (N.D. Ohio 2010) (*citing Twombly*, 550 U.S. at 570 and *Iqbal*, 129 S.Ct. at 1949).

To survive a motion to dismiss, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* And while factual allegations in the complaint must be accepted as true, that standard "is inapplicable to legal conclusions." *Id.* Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When a plaintiff sues multiple defendants, the *Twombly/Iqbal* plausibility standard also requires particularized allegations as to how each defendant violated the plaintiff's rights:

> This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional rights. Here, the court failed to separately analyze the constitutionality of the individual actions of each defendant.

*Lanman v. Hinson,* 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original); *see also Marcillis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (the *Twombly/Iqbal* standard isn't met when defendants . . . are lumped together with no particularized allegations as to how each defendant wronged the plaintiff); *Brockman v. Chevron U.S.A., Inc.*, 2010 WL 11538073, *2 (S.D. Ohio) ("A number of courts have concluded that a complaint's collective references to 'the defendants' does not meet the pleading requirements of *Twombly* and *Iqbal* because it fails to

3

give each defendant sufficient notice of the misconduct alleged against him."); *Panhandle Cleaning & Restoration, Inc. v. Nationwide Mut. Ins. Co.*, 2018 WL 3717108, *5 (N.D. W.Va.) ("Here, Plaintiffs have done exactly what the Fourth Circuit proscribes: filed a shotgun pleading that relies upon indeterminate assertions against all defendants without any specific facts regarding any particular defendants.").

### 2. Count One: Trafficking Victims Protection Reauthorization Act

Plaintiff alleges in Count I that LEM is liable under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA"). A civil claim under the TVPRA requires that a defendant knowingly benefit financially or by receiving anything of value *from participation in a venture*. 18 U.S.C. §1595(a). The Sixth Circuit has emphasized that "participation in a venture" doesn't mean participation in *any* venture but rather actual participation in a sex-trafficking venture. *U.S. v. Afyare*, 632 Fed.Appx. 272, 286 (6th Cir. 2016).

The *Afyare* court held that the TVPRA was not intended to target acts of individuals and organizations that were somehow affiliated with sex-traffickers but took no action to aid or further the acts of the traffickers. *Id* (rejecting argument that membership in a gang, alone, was a "venture" for purposes of prosecution under the TVPRA). Thus, *Afyare* held that the TVPRA doesn't target "mere acquiescence" of an individual who "turns a blind eye to the source of their financial sponsorship." *Id.* Nor can a plaintiff establish liability through association alone. *Nobel v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (citing *Afyare* at 285). Rather, a plaintiff must show some actual participation in the trafficking, such as overt conduct that furthered the trafficking venture. *Id.* As the Sixth Circuit observed: "Two or more people who engage in sex trafficking together are a sex-trafficking venture." *Afyare* at 286.

Relying on *Afyare*, the court in *Nobel v. Weinstein, supra,* held that a civil claim for participation in a sex-trafficking venture must factually allege that the defendant (1) knowingly benefitted, (2) from participation in a commercial sex-trafficking venture, (3) while knowing (or in reckless disregard of the fact) that means of force, fraud, or coercion would be used to cause the trafficked person to engage in a commercial sex act. 335 F.Supp.3d at 523-24.

Here, Plaintiff's complaint contains no plausible allegations demonstrating that LEM knowingly benefited from Plaintiff's alleged situation. Instead, Plaintiff relies upon broad opinions that all hospitality groups should be aware of sex trafficking and should follow protocols to identify and report activity supposedly associated with trafficking. The complaint lumps the Defendants together and asserts conclusory allegations that all of the hotels should have noticed signs of trafficking or taken preventative steps. There are no specific allegations of any incident where a LEM employee observed Plaintiff or had evidence that Plaintiff was being trafficked at LEM's hotel.

Additionally, Plaintiff describes alleged conduct at other independently owned and operated hotels that, though Best Western-branded, are unrelated to LEM. Based on these alleged incidents, Plaintiff simply surmises that LEM knew of and ignored Plaintiff's alleged victimization. However, and fatal to Plaintiff's claim, the complaint asserts no facts that support a reasonable inference that LEM knew of Plaintiff's situation at LEM or that LEM somehow benefited from active participation in Plaintiff's victimization. Likewise, Plaintiff fails to assert facts to support a reasonable inference that LEM was aware of, but consciously ignored, that Plaintiff was being trafficked through force, fraud, or coercion.

Moreover, Plaintiff fails to allege or establish that LEM participated in a "venture" that involved sex trafficking. 18 U.S.C. § 1591. The complaint contains no allegations that LEM

participated in or furthered the sex-trafficking venture that involved Plaintiff. Nor does the complaint allege that LEM representatives knew Plaintiff's trafficker, knew Plaintiff herself, or took any overt action to further a sex-trafficking scheme.

Finally, Plaintiff's allegations regarding the relationship between LEM and Best Western presents no viable claim against LEM because liability under the statute must be based on participation in a sex-trafficking venture, not on a legitimate commercial relationship, such as the franchisor-franchisee relationship between LEM and Best Western.

### Count Two: Negligence

In Count II of her complaint, Plaintiff attempts to state a claim for negligence, alleging that all Defendants (again lumped together) had a duty to use reasonable care to select, train, supervise, and "retain" employees to observe, investigate, and report signs of guest misconduct supposedly related to trafficking. (Doc. #1, ¶92). In conclusory fashion, Plaintiff claims that all Defendants breached a duty to use reasonable care to ensure the safety and security of guests at their hotels. *Id.* at ¶93.

To recover on a negligence claim, a plaintiff must show (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach proximately caused the plaintiff's injury. *Heimberger v. Zeal Hotel Group Ltd.*, 2015-Ohio-3845, ¶16 (10th Dist.). However, for the same reasons set forth in Part II.A.2 *supra,* Plaintiff fails to set forth sufficient facts for LEM to be liable for alleged negligence. Plaintiff fails to identify any facts to support a claim that LEM was 1) responsible for training its employees on sex trafficking, 2) failed to properly train the employees to detect and report sex trafficking, or 3) failed to provide adequate security at LEM.

Moreover, Plaintiff fails to allege that any specific acts or omissions on LEM's part related to Plaintiff. For example, in paragraph 96, Plaintiff lumps the Defendants together and alleges that they should have noticed signs of trafficking, including "repeated refusal of maid service." But Plaintiff never alleges that she or her alleged trafficker repeatedly refused maid service or that such refusals evidenced trafficking in Plaintiff's room. Nor does Plaintiff allege that LEM employees offered to provide maid service, were refused, and were aware of facts showing that such a refusal represented a sign of trafficking rather than a guest simply wanting to be left alone or not needing service. The same analysis applies to all other allegations in paragraph 96, where Plaintiff fails to specifically tie any alleged sign of trafficking to LEM.

Simply lumping Defendants together and asserting legal conclusions or conclusory regarding the elements of a claim are insufficient to meet the pleading standard of *Twombly* and *Iqbal*. Plaintiff's negligence claim against LEM should be dismissed.

### 3. Count Three: Premises Liability

Count III of Plaintiff' Complaint, like Count II, lumps Defendants together under a negligence claim alleging "premises liability." Plaintiff alleges that Defendants had notice of a dangerous condition in their hotels, namely trafficking and sexual exploitation of Plaintiff. (Doc. #1, ¶104). Plaintiff then alleges that Defendants were on notice of the condition from news stories and online reviews regarding other independently owned and operated franchises in other states. *Id.* at ¶105. Plaintiff again lumps all Defendants together as violating a laundry list of alleged duties to monitor hotels and take various security measures. *Id.* at ¶106(a)-(i).

A hotel owner owes an invitee a duty to maintain the premises in a reasonably safe condition by eliminating dangerous conditions that are known or reasonably should have been known by the owner. *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51, 52 (1978). But a hotel

7

isn't an insurer of guest safety. *Id.* Hotel owners only have a duty to warn or protect invitees from foreseeable criminal acts of third parties when an owner knows or should know that there is a substantial risk of harm to its invitees on the premises. *Id.*

Three factors show a lack of foreseeability of a crime: "(1) spatial separation between previous crimes and the crime at issue; (2) difference in degree and form between previous crimes and the crime at issue; and (3) lack of evidence revealing defendant's actual knowledge of violence." *Heimberger v. Zeal Hotel Group Ltd.*, 2015-Ohio-3845, ¶18 (10th Dist.). The underlying principle in these cases is that "because criminal acts are largely unpredictable, the totality of the circumstances must be 'somewhat overwhelming' in order to create a duty." *Id.*

Even assuming that alleged trafficking is a "dangerous condition" that somehow placed a duty on LEM, the complaint fails to plausibly allege that LEM was either on notice of this condition or that the criminal conduct of Plaintiff's trafficker was foreseeable based on overwhelming facts. Plaintiff attempts to show that LEM was on notice of sex trafficking activities at LEM by citing news articles from around the country reporting that trafficking arrests were made at other Best Western franchises. (Doc. #1, ¶¶ 68-76). Other allegations cite TripAdvisor and Yelp reviews concerning other hotels—reviews that any internet user can leave regardless of veracity. *Id.* at ¶76. Plaintiff alleges no prior police or court documents substantiating criminal activity or discussing LEM's relationship to any trafficking.

Finally, as discussed above with respect to Count II, the allegations in Count III fail to show that any trafficking occurred at LEM that would have put its owner and/or employees on notice about a "dangerous condition" that existed there. Instead the information pertains to other independently owned Best Western hotels or to general allegations of trafficking signs that hotels should supposedly look for. Thus, the Complaint does not contain any facts showing that LEM

was on notice that a dangerous condition existed at the LEM or that the crimes of Plaintiff's traffickers were foreseeable.

For example, paragraph 106 of the complaint alleges that Defendants (lumped together) should have investigated "loud noises" coming from hotel rooms as a sign of trafficking. But hotels deal with loud noises all the time. Plaintiff never alleges that a LEM employee should have heard loud noises from Plaintiff's room on a particular occasion and should have interpreted such noise as a sign of trafficking. If a loud noise was emanating from Plaintiff's room, what was the noise? Why did the noise evidence trafficking? Was a LEM employee nearby at the time of the noise? Did the LEM employee hear the noise? What should have led such an employee to suspect trafficking based on the noise? These questions reveal the conclusory nature of Plaintiff's allegations. Such allegations fail to satisfy the *Twombly/Iqbal* standard.

### 4. Count Four: Unjust Enrichment

Plaintiff's Complaint alleges unjust enrichment against all Defendants. Plaintiff claims that Defendants profited from renting rooms to those who trafficked Plaintiff. (Doc. #1, ¶113(a)). Plaintiffs also allege that Defendants generated higher profits by refusing to install security measures that would have deterred trafficking. *Id.* at ¶ 113(b)-(g).

To plead a claim for unjust enrichment, a plaintiff must allege that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit, and (3) it would be unjust for the defendant to keep the benefit without payment." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

Here, Plaintiff has not alleged that LEM received any benefit or profit from actions involving Plaintiff at the Lorain-Elyria Motel. The Complaint contains no facts that LEM

9

received increased profits from actions alleged by Plaintiff, as opposed to profits for simply renting rooms—the purpose of a hotel. Further, assuming *arguendo* that LEM did receive increased profits, the Complaint contains no facts alleging that LEM knew that it was receiving profits at Plaintiff's expense. The unjust-enrichment claim is premised on LEM owing and breaching a duty specific to Plaintiff. But as explained above, Plaintiff pleads no facts showing specific misconduct on the part of LEM as it relates to Plaintiff.

### B. Venue is improper in this district.

Alternatively, venue is improper in this Court, thus warranting dismissal. The federal venue statute, 28 USC 1391(b), states:

> (b) Venue in General.—A civil action may be brought in—
>
> > (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> >
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> >
> > (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Section II of Plaintiff's Complaint describes where alleged trafficking involving Plaintiff took place. In paragraph 52, Plaintiff alleges that she was repeatedly trafficked at both the Economy Inn in Cuyahoga Falls, Ohio and the Motel 9 in Elyria, Ohio. In paragraph 53, Plaintiff alleges that she was trafficked at the LEM hotel in Elyria. Plaintiff fails to allege any other locations at which she was trafficked. All three of the above locations are in the Northern District of Ohio.

Plaintiff's purported bases for filing suit in this district is the fact that Best Western's agent for service is located in Columbus, and there are Best Western-branded hotels in Franklin

County and elsewhere in this district. But as explained in Best Western's motion to dismiss, Best Western is simply a franchisor with no property, facilities, or operations in Ohio. *See Nutt v. Best Western International*, 2016 WL 6780708, *2-5 (U.S.D.C M.D. Pa.) (federal court lacks jurisdiction over Best Western, Intl.).

Plaintiff also alleges that Defendant "Economy Inn" has hotels in Muskingham County and elsewhere in Ohio. (Complaint, ¶15). But the Economy Inn-branded hotel at issue in this case is owned by Sri Ram, LLC d/b/a/ Economy Inn, and that hotel is in Cuyahoga Falls, Ohio—i.e., the Northern District. Sri Ram's answer states that it is an independently operated hotel and that it is not affiliated with other "Economy Inn"-branded facilities. (Doc. #28, ¶6). A search of the Ohio Secretary of State's website reveals "Economy Inn" registered as a fictitious name and tradename, but no entity known as "Economy Inn" is documented or registered in Ohio.

Thus, Plaintiff cannot establish proper venue in the Southern District. No substantial part of any events or omissions giving rise to the claims occurred in this district under 28 U.S.C. §1391(b)(2). And no defendant resides in this district under §1391(b)(1). Even if "Economy Inn" were a resident of this district, "all" defendants are not Ohio residents as required by §1391(b)(1) because Best Western International, as explained in its motion to dismiss, isn't an Ohio resident. Since venue is improper, this case should be dismissed under 28 U.S.C. §1406(a).

Alternatively, the court should transfer venue to the Northern District of Ohio under 28 U.S.C. §1404(a), which reads:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought.

*Kerobo v. Southwestern Clean Fuels Corp.*, 285 F. 3d 531, 539 (6th Cir. 2002).

11

Section 1404(a) is intended to give district courts discretion to transfer cases based on an individualized, case-by-case consideration of convenience and fairness. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Congress adopted §1404(a) "to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). A district court has broad discretion over whether to transfer a case under §1404. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir.1994). Relevant factors include the convenience of the parties and witnesses, public-interest factors of systemic integrity, and general principles of fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). No single factor is dispositive; instead, transfer is appropriate if the balance of these factors strongly favors trying the case in the transferee district. *Donia v. Sears Holding Corp.*, 2008 WL 2323533 at *2, quoting, *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998).

Here, the relevant factors favor transferring the case to the Northern District. The hotels where trafficking allegedly occurred are all located in the Northern District. Thus, potential employee witnesses would likely be located in the Northern District, and relevant documents maintained by the hotels would be found in the Northern District. Plaintiff herself resides in the Northern District. (Complaint, ¶10). This case is of greater interest for the Northern District to decide, since the trafficking allegedly occurred there. Further, requiring that attorneys and witnesses travel to the Southern District for court proceedings and trial would constitute an undue and unnecessary burden given the allegations centered in the Northern District.

### III. CONCLUSION

The complaint should be dismissed as to LEM because it fails to state a viable, plausible claim under the *Twombly/Iqbal* standard.  Alternatively, the case should be dismissed (or transferred) due to improper venue.

Respectfully submitted,

*/s/ John R. Chlysta*
Kenneth A. Calderone (0046860)
John R. Chlysta (0059313)
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, OH  44333
Telephone:  (330) 670-7324 / (330) 670-7305
Facsimile:   (330) 670-7440 / (330) 670-7442
Email:  kcalderone@hcplaw.net
           jchlysta@hcplaw.net

## CERTIFICATE OF SERVICE

This document was filed on August 26, 2019, using the court's CM/ECF system, which will send notification of such filing to all parties. Parties may access this document through the Court's electronic filing system. Copies of this filing were mailed to the parties not on the Court's electronic filing system.

*/s/ John R. Chlysta*

<<HCP #1066290-v1>>