IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JANE DOE S.W., an individual, | Case No.: 2:19-cv-01194 |
| Plaintiff, | Related Case Nos.: 2:19-cv-00755 |
| | 2:19-cv-00849 |
| v. | |
| | Judge Marbley |
| LORAIN-ELYRIA MOTEL INC. d/b/a BEST WESTERN INN; BEST WESTERN INTERNATIONAL, INC.; SRI RAM, LLC d/b/a ECONOMY INN; and BAPA ASSOCIATES, INC. d/b/a MOTEL 9, | Magistrate Judge Deavers |
| | |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

**REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO
BEST WESTERN INTERNATIONAL, INC.'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Plaintiff has not satisfied her burden of establishing personal jurisdiction over Best Western International, Inc. ("BWII"), which is headquartered in Arizona, not Ohio, and which does not own or operate the Lorain-Elyria Motel (the "Hotel"). She merely rests her arguments on her pleadings, which is not good enough. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (stating that plaintiff cannot rely on her pleadings alone to support personal jurisdiction).

Plaintiff has likewise failed to overcome the numerous deficiencies in her Complaint, which make her claims fail as a matter of law. As the Court will recall, plaintiff did not allege that BWII owns or operates the Hotel where she allegedly was assaulted, nor that BWII is an innkeeper. Nor can she make those allegations, because BWII is neither. Even the owners of the hotel, who recently appeared and filed their own motion to dismiss, have represented to this

{W0172220.1}

Court that BWII does not own or operate the hotel.  *See* ECF Doc. # 40 p.3 (Defendant Lorain-Elyria Motel LLC's Motion to Dismiss or Transfer Due to Improper Venue).  Nonetheless, plaintiff repeatedly makes those unsupported and unpled accusations (and many more) in her Opposition to BWII's Motion to Dismiss.  This, too, is not good enough.  There are no facts to support the accusation in Plaintiff's Opposition and certainly not any facts that have been pled properly.  Her theories under the Trafficking Victims Protection Reauthorization Act, agency, and vicarious liability claims are likewise flawed as a matter of law.  For these reasons and the reasons set forth in BWII's Motion to Dismiss, plaintiff's Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A.    Plaintiff has Failed to Respond to BWII's Personal Jurisdiction Argument.

In BWII's Memorandum of Law in Support of its Motion to Dismiss, it makes a detailed argument regarding the lack of personal jurisdiction of BWII in the Southern District of Ohio.  Plaintiff's Opposition to BWII's Motion to Dismiss provides no real argument in response to BWII's personal jurisdiction argument.   Plaintiff bears the burden of establishing personal jurisdiction over BWII, but has made no effort to do so in her Opposition. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980).   Instead, she relies upon the conclusions and generalizations in her Complaint, such as the existence of forty-four Best Western brand hotels in Ohio, the conclusion that BWII received profit from the plaintiff's trafficker renting rooms at the Lorain-Elyria Motel, and that BWII's business practices caused plaintiff to suffer injury. However, plaintiff cannot rely on her pleadings alone to support personal jurisdiction.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) *Weller v. Cromwell Oil Co*., 504 F.2d 927, 929-30 (6th Cir. 1974) (finding that plaintiff had not met burden of establishing personal jurisdiction over defendants when

defendants submitted affidavits asserting that defendants did not reside in forum state and did not have any contact with plaintiff in forum state, and in response to the affidavits, plaintiff relied solely on information contained within the pleadings). *See also Oddi v. Mariner-Denver Inc.*, 461 F.Supp. 2d 306, 310 (S.D. Indiana 1978) (finding that the mere fact that a national hotel chain has subsidiaries, franchisees or licensees in a state does not subject it to the jurisdiction of the state).

Further, in *Nutt v. Best Western International et al.*, the Middle District of Pennsylvania addressed a virtually identical personal jurisdiction argument and found that the plaintiff failed to establish personal jurisdiction over BWII. *See* No. 3:16-CV-0002, 2016 WL 6780708 (M.D. Pa. Nov. 16, 2016). In *Nutt,* the court held "[t]he mere allegations that BWI licenses its trade name and logo in Pennsylvania, maintains a reservation system which caters to citizens of Pennsylvania, and provides national advertising, without more does not render BWI "at home" in Pennsylvania and subject it to general jurisdiction here." *Id.* at *3. The court in *Nutt* found that in response to BWII's Motion to Dismiss, plaintiff failed to set forth a meaningful counterargument through affidavits or otherwise, setting forth BWII's particular operations in the forum state. *Id.* The same analysis applies to the present case. In response to BWII's personal jurisdiction argument, plaintiff relies on her pleadings and merely concludes that a showing of jurisdiction is "apparent" based upon BWII's trade name and logo being found on hotels in the state of Ohio and maintaining a reservation system. Respectfully, as was the case in *Nutt,* personal jurisdiction over BWII based upon the allegations made is anything but apparent.

As fully briefed by BWII in its Motion to Dismiss, "Personal jurisdiction may be either general or specific depending on the nature of the contacts that the defendant has with the

forum state." *Bird v. Parson*, 289 F.3d 865, 871 (6th Cir. 2002).  Plaintiff has not demonstrated that BWII is "at home" in Ohio for a finding of general jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2015); *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).  The United States Supreme Court held that, except in rare and exceptional circumstances, there can be no exercise of general jurisdiction over a defendant corporation unless that entity is either incorporated in or has a principal place of business in the forum state.  *Daimler*, 571 U.S. at 137. In fact, in *Daimler*, the United States Supreme Court held that a company's presence in a forum state, alone, does not amount to "continuous and systematic contacts" for a finding of general personal jurisdiction. *Id.* Instead, the defendant's actions must be so continuous that the defendant corporation is essentially at home. *Id.* The plaintiff has not and cannot establish that BWII is at home in Ohio. Therefore, this Honorable Court has s no general personal jurisdiction over BWII.

Likewise, there is no showing of specific jurisdiction over BWII.  Specific jurisdiction exists only when the suit "'aris[es] out of or relate[s] to the defendant's contacts with the forum that the defendant himself creates.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2015); Walden v. Fiore, 571 U.S. 277, 284-85 (2014).  BWII does not own, operate, or control any lodging or other type of property in the state of Ohio, and it does not own or operate the Lorain-Elyria Motel. BWII is a non-profit Arizona membership association. Due to its status as a membership organization, it did not have the ability to hire, discharge, or supervise employees at the Lorain-Elyria Motel.  BWII does not have the right to issue paychecks, provide employee benefits, enter into employment contracts, provide work assignments, evaluate performances, discipline, or promote employees of its members.  BWII does not control any aspect of employment at the Lorain-Elyria Motel. Likewise, BWII does not maintain an office, bank account, or any other assets

in the state of Ohio. *See*, Hutchinson Affidavit, Exhibit A to BWII's Motion to Dismiss. Plaintiff cannot ignore the attenuated relationship between a membership organization and independent hotels become members of the brand. Rather, she must make a showing regarding how the actions of BWII caused plaintiff's alleged injuries and thereby subjected it to litigation in this court. Plaintiff has not made the necessary factual showing. As a result, BWII respectfully request that this Honorable Court dismiss plaintiff's Complaint against it for a lack of personal jurisdiction.

**B.      Plaintiff Has Not Alleged a Plausible TVPRA Claim Against this Defendant.**

Plaintiff's identifies two theories of civil liability under the Trafficking Victims Protection Reauthorization Act 18 USC § 1595 ("TVPRA") in her Opposition—perpetrator theory and beneficiary theory. Plaintiff claims that these two, separate theories exist due to amendments to the TVPRA that show Congress's intent to broaden the scope of liable entities under the Act. Plaintiff's interpretation, however, conveniently allows her to assert a TVPRA claim against BWII without alleging any facts showing BWII's "participation in a venture," as required by the express language of section 1595(a). Additionally, the Complaint lacks any facts that BWII "knowingly benefited" from the perpetrator's venture.

**1.      Section 1595(a) clearly requires a showing of "participation in a venture" to bring a civil claim under the TVPRA.**

Section 1595(a) states:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever <u>knowingly benefits</u>, financially or by receiving anything of value from <u>participation in a venture</u> which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

18 USC § 1595(a) (emphasis added).

Per this language, there are two categories of wrongdoers:  1) the actual perpetrator of the crime and 2) a party who participates in a venture and knowingly benefits from that participation.  In her Opposition, plaintiff focuses solely on the "knowingly benefits" language of section 1595(a), which we address below, and ignores the "participation in venture" language. Despite having undergone several rounds of amendments, Congress retained the phrase "participation in a venture" in section 1595(a).  As a result, the phrase "participation in a venture" must be considered when applying the TVPRA. See *Holloway v. United States*, 562 U.S. 1, 6 (1999) (holding that "[w]hen interpreting a statute, one must consider not only the bare meaning of the critical word or phrase but also its placement in the statutory scheme"). The United States Supreme Court has held that courts must give effect to every word or clause of a statute. *Williams v. Taylor*, 529 U.S. 362, 404 (2000).

Congress could have imposed civil liability on anyone who knowingly benefitted, but that is not what it did.  The wrongdoer must also participate in the venture.   Congress's language identifying those who "participated in a venture" remains a vital part of the definition. As such, under the clear language of 1595(a) "participation in a venture" is directly relevant to the claim directed against BWII and there are no allegations relating to this element.

In addition, both the TVPRA and the Sixth Circuit have defined "participation" and "venture."  Why would they do so if this language was not intended to apply? Section 1591(e) defines "venture" as a group of two or more individuals associated in fact. 1951(e)(6). Additionally, the Sixth Circuit in *Afayre*, clarified what "venture" means within the TVPRA when it stated:

> Venture . . . is an undertaking that involves risk, especially in a commercial enterprise. And according to the Random House Webster's Unabridged Dictionary, a "venture" is an 'undertaking involving uncertainty as to the outcome, esp. a risky or dangerous one"; or "a business enterprise or speculation in which something is risked in the hope of profit; a commercial or other speculation"; or "the money ship, cargo, merchandise, or the like, on which risk is taken in a business enterprise or speculation." Clearly each of these definitions required an undertaking of some kind directed to some defined end.

*United States v. Afayre*, 632 Fed. Appx 272, 279 (6th Cir. 2016).

The Sixth Circuit in *Afayre* used this analysis of "venture" to arrive at the holding that participation requires some "overt act" in furthering the venture. 632 Fed. Appx at 286.  It specified that "mere negative acquiescence is not enough." *Id.* To hold otherwise, the Court stated would create "a vehicle to ensnare conduct that the statute never contemplated." *Id.* BWII is aware that the Sixth Circuit decided *Afayre* pursuant to the criminal violations of Section 1591. BWII is equally aware that a hotel is different than the example used in *Afayre*.  However, BWII does not refer to *Afayre* for its factual similarities, but rather to show *Afayre* remains instructive regarding how the Sixth Circuit has defined "participation in a venture" under the TVPRA.  The plaintiff has provided no other case law from the Sixth Circuit, or otherwise, providing a definition of "participation in a venture" that contradicts *Afayre.* As a result, it remains persuasive.

In ignoring the "participation in a venture" language plaintiff would have section 1595(a) impose strict liability and would result in unintended civil liability for any commercial enterprise that failed to recognize that it provided service to and received payment from a sex-trafficker. For example, a gas station from which a trafficker purchases gas while transporting a victim could be held liable under plaintiff's interpretation of 1595(a). Likewise, a fast food chain could be held civilly liable if an employee does not recognize that he is selling food to a sex trafficker in the

process of transporting a victim.  This is plaintiff's attempt to "ensnare conduct that the statute never intended," which the Sixth Circuit in *Afayre* cautioned against.  Plaintiff's Complaint, which does not allege that BWII owned, operated or controlled the subject hotel, is devoid of facts that BWII participated in a venture that violated the TVPRA.  Accordingly, her claims under the TVPRA fail as a matter of law.

  **2. Plaintiff's Complaint provides no facts that BWII "knowingly benefited."**

  In addition, plaintiff's Complaint likewise contains no facts establishing the "knowingly benefitted" element of the TVPRA. Plaintiff cites to the case of *Ricchio v. Mclean*, 843 F.3d 553 (1st Cir. 2017) to support her proposition that renting hotel rooms (which BWII does not do) to a trafficker constitutes a knowing benefit.  However, *Ricchio* is clearly distinguishable from the present claims against BWII.  Initially, in *Ricchio*, the First Circuit found that the plaintiff had alleged specific facts to bring a TVPRA claim against the hotel owner.  *Ricchio* did not address any claims brought against a membership organization, like BWII that did not own, operate, or control the hotel.  Second, the complaint in *Ricchio* contained allegations that the plaintiff's trafficker participated in business deals with the defendant hotel, "which said parties intended to reinstate for profit." *Ricchio*, 853 F.3d at 555.  The *Ricchio* complaint also alleged that the trafficker and defendant hotel operator enthusiastically exchanged "high fives" in the parking lot about "getting this thing going again." *Id.* Plaintiff's Complaint here does not contain anything like that.  Instead, plaintiff alleges that BWII failed to protect victims, develop training programs, and implement appropriate measures to prevent sex trafficking.  The distinction between these allegations cannot be ignored. The *Ricchio* allegations clearly demonstrated that the hotel owner knew that it was engaging in business dealings with sex traffickers, was enthusiastic about the

arrangement, and was eager to earn a financial benefit from the venture. The allegations here against BWII contain no facts, or even allegations of this sort. Plaintiff did not allege that BWII owned the hotel, operated the property, employed hotel workers, maintained a relationship with plaintiff's trafficker, affirmatively participated in dealings with plaintiff's trafficker, knew anything about trafficking activities at this Hotel, or benefited from it. Indeed, plaintiff does not even allege that the actual hotel operator knew or knowingly benefited from any trafficking at its hotel. Therefore, *Ricchio* does not support a finding that BWII knowingly benefited from violations of the TVPRA.

As to plaintiff's generalizations and assumptions by way of reference to unrelated news articles and unverified Yelp reviews, they do not support a claim that BWII received a knowing benefit, either. Those references have nothing to do with the Lorain-Elyria Motel specifically. Plaintiff has failed to set forth sufficient facts showing that BWII knowingly benefited from any venture. As such, plaintiff's claims under the TVPRA against BWII should be dismissed with prejudice.

**C.      The Complaint Contains No Facts to Hold BWII Liable for Any Alleged Negligence of the Lorain-Elyria Motel.**

In further recognition of the fact that BWII does not own or operate the Hotel, plaintiff has alleged that BWII should be held vicariously liable for the conduct of the owners of the Hotel. Plaintiff relies on *Wilson v. Good Humor Corp,* 757 F.2d 1293 (D. D.C. 1985), a case from the DC Circuit, and its application of the "peculiar risk" doctrine, which Ohio courts have not adopted. Plaintiff's premise is that BWII possesses greater knowledge concerning the peculiar risk of sex trafficking and is in the best position to ensure "reasonable safety awareness." As an initial matter, this argument continues to ignore that BWII does not own or operate any hotels and that

the hotel owners bear the sole responsibility for safety matters.  Co-defendant Lorain-Elyria Motel, Inc. reaffirmed this in its motion to dismiss, stating that Best Western does not own Lorain-Elyria Motel, Inc., control Lorain-Elyria Motel, Inc.'s daily operations, or employ any staff at the Lorain-Elyria Motel.  It also assumes that BWII does not make any efforts to raise awareness about sex trafficking, which is not the case.  These and other flaws require dismissal of this claim.

      **1.      The operation of a hotel is not inherently dangerous work.**

Rather than rely on Ohio precedent concerning the peculiar risk doctrine as described in *Pusey v. Bator*, 762 N.E. 2d 968 (Ohio 2002), Plaintiff urges this Court to adopt the law in *Wilson v. Good Humor Corp*. However, the Ohio Supreme Court in *Pusey* provided the analysis for what type of work may be considered "inherently dangerous" and the allegations in plaintiff's Complaint do not suffice.

In *Pusey*, the Ohio Supreme Court held that to be inherently dangerous, work must involve "a risk, recognizable in advance, of physical harm to others, which is <u>inherent in the work itself</u>." 762 N.E. 2d 968 (Ohio 2002) (citing *Covington & Cincinnati Bridge Co. v. Steinbrok & Patrick*, 55 N.E. 618 (Ohio 1899)) and citing Restatement (Second) of Torts Section 427, comment b).  The Ohio Supreme Court specifically stated that the inherent work exception does <u>not</u> apply where "the employer would have only a general anticipation of the possibility that the contractor may be negligent in some way and thereby cause harm to a third party." *Id.*  An employer of an independent contractor may assume that a careful contractor will take routine precautions against all ordinary and customary dangers that may arise in the course of contemplated work. *Id. See also Gore*, 774 N.E.2d at 819. Those types of precautions are the responsibility of the contractor who is hired to complete the work. *Trotwood v. S. Cent. Constr., LLC*, 947 N.E.2d 1291,

1300 (Ohio App. 2011). Following this logic, the court held the exception is limited to "dangerous work and it cannot not be extended to proper work dangerously done." *Id.* at 974 (citing *Joseph v. Consol. Rail Corp*, No. CA. 87-05-065, 1987 WL 19481 (Butler App. No. Oct. 30 1987)).

In *Pusey,* the court focused on work in which it is foreseeable or anticipated that someone might be injured as a direct or probable cause of the work being contracted for, if reasonable care is not taken in  its performance. *Id.* at 281. (emphasis added) (citing *Szymanski v. Great Atlantic & Pacific Tea Co.*, 74 N.E. 2d 205(Ohio App 1947)). Stated differently, courts have focused upon whether "the tortious conduct of the independent contractor <u>directly flowed from the work the contractor was hired to perform</u>. . ." *Joseph*, 1987 WL 19481*4.  For example, the court in *Pusey* held that the work performed by an armed security guard deterring thieves and vandals may be classified as "inherently dangerous work" because an armed confrontation with a suspicious person may be <u>required</u> as part of a security guard's job. *Pusey,* 762 N.E.2d at 974 (emphasis added). *See also Hayes v. Goldenstein*, 697 N.E.2d 224, 226 (Ohio App. 1997) (holding that an employer was liable for actions of head hunter hired as an independent contractor because the duties of a headhunter require them to apprehend individuals, which creates an inherent risk of danger).

Plaintiff attempts to categorize the Lorain-Elyria Motel as BWII's agent, joint employer or single employer, but BWII is a membership organization and all hotels within that organization are independently owned and operated.  BWII does not employ, jointly or otherwise, anyone at the Hotel and BWII has no input as to whom the Hotel hires or fires.  In its own Motion to Dismiss, Lorain-Elyria Motel admonishes plaintiff for her ongoing allegations attempting to establish ownership, control, or agency between BWII and the Lorain-Elyria Motel.  (*See* ECF Doc.

# 40 pp 3-4 (Defendant Lorain-Elyria Motel LLC's Motion to Dismiss or Transfer Due to Improper Venue)). Nor did BWII hire Lorain-Elyria Motel to perform anything and plaintiff does not say otherwise in the Complaint.

Further, it is not foreseeable that an individual will be harmed by sex trafficking simply because a hotel exists and is operational. Sex trafficking is a criminal act that results from the actions of a third party that is unrelated to the operation of a hotel. Because sex trafficking relies on independent actions of a third party, it cannot be said to flow directly from the day to day operations of a hotel.  Thus, the operation of a hotel is clearly not the type of dangerous work that Ohio courts have contemplated in cases like *Pusey, Joseph, or Hayes.* As a result, the inherent danger exception is inapplicable to this case. Moreover, plaintiff cannot point to any Ohio case law that has classified hotel operations as "inherently dangerous work" for this exception to apply.  For these reasons, BWII cannot be held liable for the acts of the Lorain-Elyria Motel.

## 2. *Wilson v. Good Humor* is clearly distinguishable from this case.

Because plaintiff cannot point to any Ohio cases to support her theories for holding BWII liable for the actions of the Lorain-Elyria Motel, plaintiff urges this Court to adopt the holding of *Wilson v. Good Humor Corp*.  Importantly, plaintiff admits in her Opposition that *Wilson* is not controlling precedent.  Indeed it is not.  Further, there are both factual and legal differences between plaintiff's claims here and *Wilson* that render *Wilson* distinct and inapplicable to this case.

The court in *Wilson* held that that Good Humor, a corporation, could be liable for the actions of an independent contractor if the corporation knew or had special reason to know that

its operation was likely to create, under particular circumstances, a unique risk to children and did nothing to minimize the risk. In that case, the independent contractors were drivers of ice cream trucks and the risk included injuring children by negligently operating their ice cream trucks during curbside ice cream sales. As a result in *Wilson*, the court's analysis focused on tortious conduct committed directly by an independent contractor. However, the risk of sex-trafficking, unlike the risk of negligently operating an ice cream truck, involves criminal conduct that is committed by a third party, not an independent contractor. This raises a clear distinction regarding the factual dissimilarities between the two cases.

First, Ohio courts have specifically held that hotel owners only have a duty to warn or protect their business invitees from foreseeable criminal acts of third parties when they know or should know that there is a substantial risk of harm to their invitees on the premises. *Heimberger v. Zeal Hotel Group Ltd.*, 42 N.E. 3d 323, 330 (Ohio Ct. Apps. 2015). Plaintiff has not asserted any facts to establish BWII is a hotel owner. Indeed, the property was admittedly owned by the Lorain-Elyria Motel. Likewise, plaintiff here has provided no facts showing criminal activity at the Lorain-Elyria Motel that was foreseeable. The generalized allegations regarding criminal activity occurring at other independently owned and operated Best Western hotels does not establish foreseeability of criminal activity at the Lorain-Elyria Motel. Thus, plaintiff's reliance on *Wilson* is misplaced.

Second, there are obvious differences in job duties between the hotel operators and ice cream truck drivers. The independent contractors in *Wilson* operated ice cream trucks. Their duties involved driving a truck and selling novelty ice cream treats on behalf Good Humor. The court in *Wilson* found reasons existed for Good Humor to provide information to the drivers to

minimize risk. Hotels, on the other hand, are brick and mortar business establishments. Individuals who own hotels are classified as business owners. As business owners, these individuals are expected to have knowledge about the day to day operations of the hotels, employment matters at the hotel, and financial management to ensure that that the business remains profitable. Likewise hotels are charged with certain duties to warn and protect invitees from foreseeable criminal acts of third parties. Unlike the relationship in *Wilson* between Good Humor and its drivers, the duty already exists for hotel operators to warn and protect invitees from foreseeable criminal action.

BWII is not in a better position to recognize that risk above and beyond what is known and recognized by the hotel operator. The hotel owners themselves have specialized knowledge regarding their properties, arguably even more so because they control business operations. This is supported by the allegations in plaintiff's Complaint, which undermine the application of *Wilson* to BWII, as plaintiff pleads and alleges that the individual motels and hotels named as defendants in this case were aware of the trafficking, the risk of trafficking, and the results of trafficking that occurred in their facilities.

**D.    Plaintiff's Complaint Alleges Insufficient Facts to Establish an Agency Relationship Between BWII and the Lorain-Elyria Motel.**

Plaintiff's argues that BWII may be held liable for any alleged negligence of the Lorain-Elyria Motel under agency principles. She states that courts may find that an agency relationship exists between a franchisee and franchisor through actual agency or apparent agency. While true in certain novel circumstances, that is not the general rule and BWII is not even a franchisor. BWII is a membership organization. Nevertheless, the Complaint remains devoid of facts showing

that BWII had any control over the daily operations of the Lorain-Elyria Motel, for a finding of actual agency or apparent agency to be made.

       **1.**     **The Complaint contains insufficient facts for a finding of actual agency.**

In support of her argument establishing actual agency, plaintiff points out that Best Western's website allows a potential customer to reserve a room at any Best Western Hotel in the country.  She cites to a case from the District of Maryland, *Millers Capital Insurance v. Vasant*, to support her assertion that because BWII offers a centralized reservation system, it exhibits the necessary control over the Lorain-Elyria Motel for a finding of agency. *See* ECF Doc. 34-2 (Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Exhibit B).  *Vasant* is easily distinguishable.  First, in *Vasant*, when examining the defendant's Summary Judgment Motion, the court found that the plaintiffs had produced evidence showing that the corporate entity had exerted a "web of control" in the running of the hotel. ECF Doc 34-2 p. 16 (Plaintiff's Brief in Opposition to Defendant BWII's Motion to Dismiss Exhibit B). In *Vasant*, the plaintiff produced evidence of "lively communications between the hotel and corporate member association whenever a reservation needed to be completed." *Id.* The court reasoned that this evidence of "lively communications" helped to establish daily control over the hotel allowing the plaintiff's claim of agency to survive summary judgment. *Id.* However, the plaintiff conveniently omitted the following portion of the court's analysis in her Brief in Opposition to Motion to Dismiss.

> It should further be noted that there exists a difference between simple administrative control in order to ensure brand compliance, and actual control over the daily operations of a hotel.  Within the realm of the franchisor-franchisee paradigm, the execution of mere administrative control by the franchisor will not bind it to a lawsuit predicated upon the commission of a negligent tort by an employee of the franchisee.

*Id.* at pp. 16-17 (emphasis added).  Further, district courts within the Sixth Circuit have held that when a franchisor ensures that a franchisee adheres to basic tenements of a franchise agreement to ensure uniformity, this adherence <u>does not support</u> a finding that the franchisor exerted control over the daily operations of the franchise. *See Gray v. McDonalds USA Inc.*, 874 F. Supp. 2d 743, 750 (W.D. Tenn. 2012); *Baetzel v. Home Instead Senior Care*, 370 F Supp. 2d 631, 640 (N.D. Ohio 2005) (rejecting theories of joint employer and single employer theory due to an insufficient showing of control). *See also Allen v. Greenville Hotel Partners, Inc.*, 409 F. Supp. 2d 672, (D.S.C. 2006) (finding that the rights contained within a franchisee agreement does not establish a franchisor's right to control the hotel); *Wendy Hong Wu v. Dunkin Donuts, Inc.*, 105 F. Supp. 2d. 83, 93-94 (E.D. N.Y. 2000) (finding that a franchisor's ability to make recommendations to a franchisee does not establish franchisor's right to control); *Triplett v. Soleil Group Inc.*, 664 F. Supp. 2d 645, 650 (D.S.C. 2009) (finding that adherence to hotel inspection procedure set forth in License Agreement did not establish a right to control); *Hunter v. Ramada World Wide Inc.*, No. 1:04CV00062ERW 2005 WL 1490053 *7 (E.D. Mo. June 23, 2005) (holding that the license agreement was clearly meant to ensure uniformity and standards for franchise system and did not amount to daily control); *Kerl v. Dennis Rasmussen Inc.*, 682 N.W.2d 328, 338 (Wis. 2004) (holding that the existence of a franchise agreement alone does not establish that a franchisor had the ability to control the day-to-day operations of a franchise for an imputation of liability).

Plaintiff here has erroneously cited to *Vasant* as though it directly supports the proposition that a centralized reservation system, alone, shows that BWII controlled the daily operations of the Lorain-Elyria Motel for a finding of agency.  But *Vasant* does not stand for that proposition.  In its holding, the court cautions that "simple administrative control" is *insufficient*

for a finding of agency. BWII's booking system as described by plaintiff in her Opposition amounts to this type of administrative control. Aside from the reservation system, plaintiff cites to no other facts of control.  Although plaintiff speculates that discovery will reveal if additional facts regarding control exist, plaintiff must assert sufficient facts at the pleading stage that give rise to a plausible claim.  Plaintiff has failed to set forth those critical facts.

**2.    The Complaint contains insufficient facts for a finding of apparent agency.**

The plaintiff also claims that BWII is liable for the acts of the Lorain-Elyria Motel under the theory of apparent agency. She claims that the Lorain-Elyria Motel lead plaintiff to believe that an agency relationship exists between it and BWII because of the Lorain-Elyria Motel's use of the Best Western Brand name.

Under Ohio law, apparent agency exists when the principal intentionally or by lack of ordinary care, causes or allows third persons to act upon the apparent agency relationship. *Broock v. Nutri/System Inc*., 654 F. Supp. 7, 10 (S.D. Ohio 1986). This requires the principal to hold the agency out to the public as possessing sufficient authority to act on his behalf. *Irving Leasing Corp. v. M&H Tire Company et al.*, 475 N.E.2d 127, 132 (Ohio Ct. App. 1984).  Ohio courts have held that apparent agency may exist when a business permits another to use its name when the use of the name is founded upon the "reliance of the public upon the business or trade name" and the business name assists with advertising or promoting a specific product. *Broock*, 654 F.Supp. at 10 (citing *Agosto v. Leisure World Travel*, 304 N.E.2d 910, 913 (Ohio Ct. App. 1973).

BWII continues to deny that a franchisor/franchisee relationship existed between it and the Lorain-Elyria Motel, rather BWII is a member organization. However for purposes of responding to plaintiff's argument regarding apparent agency, no such facts exist in the

Complaint to support that theory of liability against BWII. Plaintiff does not allege that she purchased any products or services from Lorain-Elyria Motel or from BWII. In fact, the allegations indicate that she agreed to meet her trafficker without identifying how, why or who chose the Lorain-Elyria Motel. Plaintiff certainly does not allege that Lorain-Elyria Motel, representing itself as a Best Western brand, influenced plaintiff's decision to associate with the hotel. Instead, plaintiff alleges that she was held against her will at the Lorain-Elyria Motel due to the actions of her trafficker. Her trafficker's criminal actions in no way are related to the brand name that Lorain-Elyria Motel held out to the public. In order for apparent agency to be established, the injured plaintiff must have relied upon the Best Western brand name and that reliance lead to her harm. There are no allegations of reliance by plaintiff in this case. Thus, plaintiff's theory of liability against BWII under apparent agency must fail, and the Complaint against BWII must be dismissed.

**E.** **Plaintiff's Claims of Premise Liability and Unjust Enrichment Remain Factually Insufficient**

Plaintiff erroneously relies on the law that applies to innkeepers. Innkeepers only have a duty to warn or protect its business invitees from criminal acts of third parties when "the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner." *Heimberger v. Zeal Hotel Group Ltd.*, 42 N.E. 3d 323, 330 (Ohio Ct. Apps. 2015). But, BWII is not an innkeeper and plaintiff's Complaint does not allege otherwise. BWII did not own or operate the Lorain-Elyria Motel or control the property or employ its staff. Without pleading these crucial elements, plaintiff cannot make a claim for premise liability against BWII. Further, the plaintiff's Complaint contains no facts that plaintiff's injuries were foreseeable at the Lorain-Elyria-Motel. In her

Opposition, plaintiff has not offered any new facts in support of this contention. The premise liability claim remains factually insufficient.

As to the unjust enrichment claim, plaintiff continues to argue that BWII financially benefited from the renting of rooms used for sexual exploitation, and that BWII was aware of the pervasiveness of human trafficking on its branded properties.  These claims rest on the premise that BWII provided the rooms, without supporting facts. Plaintiff once again attempts to substitute BWII in the place of the Lorain-Elyria Motel, which was independently owned and operated.  Plaintiff's argument yet again ignores that it did not own or operate the hotel and could not therefore "provide" the rooms and rests merely on conclusions, not pled facts. Without more, plaintiff's purported premises liability and unjust enrichment claims must fail.

### III. CONCLUSION

Therefore, for the reasons described in greater detail above, defendant Best Western International Inc. respectfully requests that this Honorable Court dismiss plaintiff's Complaint against it with prejudice.

Respectfully submitted,

ULMER & BERNE LLP

By:  /s/ Paul J. Cosgrove
  JENNIFER HAGEMAN, ESQUIRE    (0066632)
  PAUL J. COSGROVE, ESQ. (0073160)
  SARAH M. BENOIT, ESQ. (0086616)
  600 Vine Street, Suite 2800
  Cincinnati, Ohio 45202-2409
  Telephone: (513) 698-5000
  Facsimile: (513) 698-5023
  Email: jhageman@ulmer.com
  pcosgrove@ulmer.com
  sbenoit@ulmer.com

JonesPassodelis, PLLC


By: /S/ Constantine J. Passodelis
CONSTANTINE J. PASSODELIS, ESQ.
OH I.D. #0074869
*Pro Hac Vice to be Filed*
 Email:  dpassodelis@jonespassodelis.com
Gulf Tower, Suite 3410
707 Grant Street
Pittsburgh, PA  15219
(412)  315-7272
(412)  315-7273 - FAX

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document

has been forwarded to all counsel of record by:

| | |
|---|---|
| \_\_\_\_\_ | U.S. First Class Mail, Postage Paid |
| \_\_\_\_\_ | Hand Delivery |
| \_\_\_\_\_ | Certified Mail, Return Receipt Requested |
| \_\_\_\_\_ | Facsimile Transmittal |
| \_\_\_\_\_ | VIA E-Mail |
| \_\_\_\_\_ | UPS Delivery |
| _X_ | Electronic Filing / Service |

at the following address:

Pamela Borgess, Esquire
Borgess Law, LLC
6800 W. Central Avenue, Suite E
Toledo, OH  43617

Kimberly A. Dougherty, Esquire
Andrus Wagstaff, P.C.
19 Belmont Street
South Easton, MA  02375

Megan A. Bonanni, Esquire
Pitt, McGehee, Palmer & Rivers, P.C.
117 West 4th Street, Suite 200
Royal Oak, MI  48067
*(Counsel for Plaintiffs)*

Kenneth A. Calderone, Esquire
Catherine E. Nagy, Esquire
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, OH  44333
*(Counsel for Loraine-Elyria Motel Inc. d/b/a Best Western Inn)*

William B. Benson, Esquire
Matthew Stephen Teetor, Esquire
Molly R. Gwin, Esquire
Isaac, Wilkes, Burkholder & Teetor, LLC
2 Miranova Place, Suite 700
Columbus, OH  43215
*(Counsel for SRI Ram, LLC d/b/a Economy Inn)*

Jonathan P. Blakely, Esquire
P.O. Box 217
Middlefield, OH  44062
*(Counsel for BAPA Associates, Inc. d/b/a Motel 9)*

Date: 9/6/2019

By:  /S/ Paul J. Cosgrove

    Jennifer J. Hageman, Esq. (0066632)
    Paul J. Cosgrove, Esq. (0073160)
Sarah M. Benoit, Esq. (0086616)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409
Telephone: (513) 698-5000
Facsimile: (513) 698-5023
Email: jhageman@ulmer.com
       pcosgrove@ulmer.com
       sbenoit@ulmer.com
*Attorneys for Defendant,*
*Best Western International, Inc.*

and

Constantine J. Passodelis, Esquire
OH I.D. #0074869
*Pro Hac Vice to be Filed*
Email:  dpassodelis@jonespassodelis.com

JonesPassodelis, PLLC
Gulf Tower, Suite 3410
707 Grant Street
Pittsburgh, PA  15219
(412)  315-7272
(412)  315-7273 - FAX

*Attorneys for Defendant,*
*Best Western International, Inc.*