**DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JANE DOE S.W., an individual,

Plaintiff,

v.

LORAIN-ELYRIA MOTEL INC. d/b/a BEST
WESTERN INN; BEST WESTERN
INTERNATIONAL, INC.; SRI RAM, LLC
d/b/a ECONOMY INN; and BAPA
ASSOCIATES, INC. d/b/a MOTEL 9,

Defendants.

Case No.: 2:19-cv-01194

Related Case Nos.: 2:19-cv-00755
                                    2:19-cv-00849

Judge Marbley
Magistrate Judge Deavers

## PLAINTIFF JANE DOE S.W.'S RESPONSE TO DEFENDANT LORAIN-ELYRIA MOTEL, INC.'S MOTION TO DISMISS

COMES NOW the Plaintiff, S.W. (the "Plaintiff"), by and through the undersigned counsel, and respectfully submits the instant Response to Defendant Lorain-Elyria Motel, Inc.'s (the "Movant" or "Defendant") Motion to Dismiss ("Response") in accordance with this Honorable Court's Order dated September 12, 2019. In support of her opposition to the Defendant's Motions to Dismiss, the Plaintiff provides the following law and argument.

## INTRODUCTION

Despite the Movant's arguments that the Complaint in this case is insufficient on its face, other Defendants found the Plaintiff's initial pleading facially sufficient and answered the Complaint in turn. *See* Answer of Defendant BAPA Associates, Inc. ECF No. 25 and Answer of Sri Ram LLC ECF No. 28. This contradicts many of the Movant's arguments, both generally and specifically, that the Complaint is insufficient on its face.

The United States Supreme Court has discussed the tremendous toll human trafficking has taken on our society and the major role of the hospitality industry in this specific scourge: "The

private pain and public costs imposed by human trafficking are beyond contention, and motels provide an obvious haven for those who trade human misery."[1] The hospitality industry must not be permitted to continue to knowingly benefit financially – in violation of the Trafficking Victim Protection Reauthorization Act ("TVPRA") – by facilitating sex trafficking through renting rooms to individuals they knew or should have known were engaging in sex trafficking ventures. For the reasons stated herein, the Movant's efforts to win dismissal of this case should be summarily denied.

## I.     RELEVANT FACTS ALLEGED IN THE PLAINTIFF'S COMPLAINT

The Plaintiff is a survivor of sex trafficking. *See* ECF No. 1 at ¶ 4.  She is a "victim" of sex trafficking within meaning of the TVPRA. *Id*. at ¶ 10.  She was repeatedly coerced, and compelled by violent force, into commercial sex acts at the Movant's hotel. *Id*. at ¶¶ 54-55.  At the Movant's hotel, the Plaintiff showed obvious and well-known signs of human trafficking, including physical deterioration, bruising, failing to make eye contact with others, and unusual lengthy stays. *Id*. at ¶¶ 55-56.  At the Movant's hotel, the trash can in each particular room often contained an extraordinary number of used condoms and bottles of lubricants. *Id.* at ¶ 55.  At the Movant's hotel, on average three to five buyers would enter and leave the room the Plaintiff was being harbored in. *Id.* at ¶ 56.  At the Movant's hotel, the hotel rooms were routinely paid for in cash by the Plaintiff's trafficker. *Id*. at ¶ 55.  Each of the rooms at the Defendants' hotels in which the Plaintiff was trafficked showed these noticeable signs of sex trafficking boxes of condoms, a large number of used condoms in the trash, excessive requests for towels and linens, and continued cash payments. *Id*.

---

[1] *City of Los Angeles, Calif v. Patel*, 135 S. Ct. 257, 2461 (2015). (Scalia, J., dissenting, joined by Roberts, C.J. and Thomas, J.).

At the Movant's hotel, the Plaintiff saw and was seen repeatedly by hotel staff who failed to recognize clear signs of sex trafficking, including but not limited to her bruised and haggard appearance. *Id*. at ¶ 55.  Instead, the Plaintiff was tortured at the Movant's hotel and her deterioration as well as the physical evidence of her beatings were ignored. *Id*.  In return, the Movant knowingly benefited or received something of value from its facilitation or participation in a venture that they knew or should have known was engaged in sex trafficking. *Id*. at ¶¶ 66, 88-89.

## II.      STANDARD OF REVIEW

Federal courts are empowered to dismiss causes of action in complaints for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).  However, such a motion should not be brought as "a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).[2]  The Sixth Circuit has provided a three-step process for determining a complaint's sufficiency under 12(b)(6), in which the trial court must: (1) accept all of plaintiff's factual allegations as true; (2) draw all reasonable inferences in plaintiff's favor; and (3) determine whether the alleged facts and inferences plausibly give rise to an entitlement to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

## III.     THE COMPLAINT MEETS THE REQUIREMENTS OF *IQBAL/TWOMBLY* AND THEREFORE WITHSTANDS A FED. R. CIV. P. 12(B)(6) CHALLENGE

---

[2] The Court is not required to accept mere legal conclusions unsupported by factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The plausibility standard "is not akin to a probability requirement" but is a "context-specific" inquiry drawing on our "judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679, (citing *Twombly*, 550 U.S. at 556, 557) (internal quotations omitted).

The Movant expresses a general dissatisfaction with the allegations in the Complaint. The Movant argues that the Plaintiff's Complaint must be dismissed because the alleged facts lack specificity or are conclusory. To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain: (1) enough facts to state a claim to relief that is plausible; (2) more than a formulaic recitation of the cause of action elements; and (3) allegations that suggest a right to relief above a speculative level. *Estate of Smith ex rel. Richardson v. United States*, 590 Fed. Appx. 436, 439 (6th Cir. 2012) (internal quotation marks omitted). All three requirements are met in this case. The Plaintiff specifically pled facts about how and when she was trafficked at the Movant's hotel. *See* § I *supra*. Her allegations were certainly sufficient to put the Movant on notice of their wrongdoing.[3] *Erickson v. Pardus*, 551 U.S. 89, 93  (2007) (holding that the complaint need only "give the defendant fair notice of what the claim is and the grounds upon which it rests"). The movant takes issue with the fact that each Defendant is not addressed individually.  However, unlike the case law the movant relies on, in the instant matter the Defendants are all similarly situated. The complaint clearly articulates that the Defendants are all owners of hotels where the Plaintiff was regularly trafficked. Traffickers are ultimately businessmen who operate in a regular and consistent fashion over a duration of time.  As a result, the signs of the sex trafficking of the Plaintiff were the same across the Defendants' hotels. All that differed across the Defendants' hotels was the time frame at which the Plaintiff was trafficked at each and those timeframes are clearly differentiated by the Plaintiff in her Complaint. *See* ECF No. 1 ¶¶ 49-53.  This is distinguishable from cases such as *Brockman v. Chevron U.S.A., Inc.,* 2010 WL 11538073 *2, wherein the plaintiffs named a number of varied Chevron corporate entities with varying responsibilities as defendants, "provid[ed] factual allegations concerning gasoline spills and other

---

[3] In Section III, *supra*, the Plaintiff responds more specifically to Defendant's argument that even if the facts were sufficient to give notice of Plaintiff's overall allegations, they fail to demonstrate a claim under TPVRA.

4

contamination that occurred on [a] refinery site over its operational life… but only allege[d] in a collective manner that defendants are responsible for their injuries," because in the instant matter the Plaintiffs complaint clearly asserts that the Defendants are all the owners and operators of their respective hotels *and* describes the relationship between Defendant Best Western International and Defendant Lorain Elyria. *See* ECF No. 1 ¶¶ 10-17, 58-66.

## IV.   THE PLAINTIFF'S COMPLAINT STATES A SUFFICIENT CLAIM UNDER THE TVPRA

The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1591, *et seq.*, criminalizes the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion.  Separately, § 1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the perpetrators of sex trafficking or the beneficiaries of sex trafficking. *See* 18 U.S.C. § 1595(a).  Count One of the Plaintiff's Complaint, i.e., "COUNT ONE –Violation of the TVPRA 18 U.S.C. § 1595 (Against All Defendants)" explicitly and unequivocally states a beneficiary theory of liability against the Movant pursuant to § 1595 of the TVPRA, and not a perpetrator theory of liability pursuant to § 1591. *See* ECF No.1 at ¶¶ 86-90.  The Plaintiff's references to § 1591(a) in her Complaint are directed toward the Plaintiff's status as a "victim" of human trafficking, see *Id.* at ¶ 90, and the Movant's participation in a venture which they knew or should have known was engaged in sex trafficking. *See, e.g., Id.* at ¶¶ 89, 91.  Despite the Movant's efforts to conflate the Plaintiff's factual allegations pursuant to her stated beneficiary liability cause of action with that of a perpetrator liability cause of action, the Complaint clearly and sufficiently states a claim for relief under § 1595 of the TVPRA.

### A.  The Relevant History of the TVPRA

Congress passed the Victims of Trafficking and Violence Protection Act in 2000

5

("TVPA"). Pub. L. No. 106–386, 114 Stat. 1466 (2000) (codified as amended in Title 22, Chapter 78, and Title 18, Chapter 77, of the U.S. Code).  The TVPA has been reauthorized several times in the years since including 2003, 2005, 2008, 2011, 2013, and 2017.  In both the text of the TVPA and the associated legislative history, Congress revealed a strong intent to provide a means of recovery for victims of sex trafficking by allowing them to pursue civil actions for human trafficking violations.

The 2003 version of 18 U.S.C. 1595(a) was a narrow remedial statute that looked solely to establish a statutory civil cause of action against perpetrators who were or could have been held criminally liable for their misconduct, to wit: "An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." *See* Pub. L. No. 108–193, 117 Stat. 2878 (2003).  Therefore, under the 2003 language, only those criminally liable under § 1591 could be held civilly liable under § 1595.  However, in 2008, 18 U.S.C. 1595(a) was intentionally amended with substantially different language that created a category of defendants that could be held liable civilly even in the absence of criminal culpability.

By amending 18 U.S.C. § 1595 in 2008 as part of the Trafficking Victim Protection Reauthorization Act ("TVPRA"), Congress required "whoever," *i.e.*, all businesses, including those in the hospitality industry, to comply with the new law or face new civil liability. *See* Amended Pub. L. No. 110–457, title II, § 221(2), Dec. 23, 2008 (the TVPRA was amended "by inserting '(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)' after 'perpetrator'").  This amendment to the country's systemic human trafficking legislation necessitated a paradigm shift in the entire hospitality industry.

Compliance with the TVPRA requires businesses to conduct a proactive analysis to determine whether they financially benefit from participation in a sex trafficking venture. Businesses in the hospitality industry must take affirmative steps to determine whether they financially benefit from sex trafficking and if so, prevent sex trafficking on their properties. To make this determination the hospitality industry must exert some meaningful effort to apprise themselves of the activities – especially flagrant criminal activities – on location at their hotel properties.

The Plaintiff's assertions of the crucial significance of this change in the statutory language are supported by well-established principles of statutory interpretation. As a general rule, when interpreting a statute one must "consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (internal citation and quotations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("In light of the cardinal principles of statutory construction that courts must give effect to every clause and word of a statute."). There is "a canon of construction that remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968). This canon of statutory construction is especially applicable to the TVPRA considering that the language of 18 U.S.C. §1595(a) was amended in 2008 to be even broader, for when a "statute is remedial in nature, its terms must be construed in a liberal fashion." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985).

**B.  The Defendant Knowingly Benefited Financially in Violation of § 1595**

Although the law changed, the Defendant chose not to change in response. The Congressionally mandated mechanism to civilly enforce the TVPRA is explicitly stated in § 1595. Since 2008, victims of sex trafficking have been empowered to bring civil claims against whoever

7

financially benefits from what they should have known was a sex trafficking venture. The Plaintiff has plausibly alleged the Movant should have known that they financially benefitted from their participation in a sex trafficking venture. *See*, *e.g.*, ECF No. 1 ¶¶ 88-89. The Plaintiff's theory of beneficiary liability is expressed in her Complaint as follows: "Defendants knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms where a trafficker repeatedly sold the Plaintiff for sex at Defendants' hotel properties and accordingly, participated in the trafficking venture that exploited her by the various means described herein." *Id.* ¶ 89.

Since 2008, there have been at least three distinct causes of action under § 1595: 1) § 1595 perpetrator trafficking claims against a person who directly violates § 1591(a)(1); 2) § 1595 perpetrator financial beneficiary claims against a person who directly violates § 1591(a)(2); and 3) § 1595 financial beneficiary claims against a civil defendant who has *not* violated § 1591 at all, but who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person *knew or should have known* has engaged in an act in violation of this chapter." *See* 18 U.S.C.A. § 1595(a) (emphasis added).

To state either a perpetrator trafficking claim or a perpetrator financial beneficiary claim, a victim must allege actual knowledge and knowing participation in the sex trafficking venture itself because the plaintiff must prove a criminal violation of § 1591. Consequently, a perpetrator trafficking claim requires knowing participation in the direct sex trafficking activities listed in § 1591(a)(1). Likewise, a perpetrator financial beneficiary claim requires allegations the defendant "knowingly assist[ed], support[ed], or facilitate[ed]" the direct sex trafficking violation of § 1591(a)(1) and financially benefitted therefrom.

However, a financial beneficiary claim, as the cause of action alleged in this case, is

markedly different from the perpetrator claims in important ways.  In the 2008 amendment to the TVPRA, Congress determined that civil liability would attach to a financial beneficiary if that person or entity knew *or should have known* a venture in which it was engaged involved a violation of the TVPRA.  A financial beneficiary claim, therefore, need not allege knowing assistance or actual knowledge that the venture in which the defendant participated violated the TVPRA, only that the defendant *should have known* the venture from which it benefitted violated the TVPRA. By providing this distinct explicit constructive knowledge standard, Congress determined that the definition of "participation in a venture" from § 1591(e)(6) did not apply to financial beneficiary claims under § 1595.

The availability of both a financial beneficiary claim and a perpetrator financial beneficiary claim has created confusion as litigants have stretched for cites from the scant case law applying the neoteric statutory scheme.  However, the distinction between the knowledge requirement of the perpetrator claims and the constructive knowledge requirement of the financial beneficiary claim is crucial in this case.  Criminal cases prosecuting violations of § 1591 such as *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) are inapposite to civil financial beneficiary claims because in *Afyare* the Sixth Circuit was only considered conduct which Congress *criminalized* under § 1591(a)(2).  As discussed, a criminal violation of § 1591(a)(1)–(2) requires actual knowing participation in the sex trafficking venture, while a financial beneficiary claim for civil recourse does not require intentional participation in a sex trafficking venture.

## V.  The Movant Participated in a Venture that They Knew or Should Have Known Engaged in Sex Trafficking

The Movant misapplies the legal standard of knowledge that the Plaintiff must allege in this case.  The legal standard stated in *Noble v. Weinstein* and cited by the Movant is not applicable to this case.  *See* ECF No. 40 at 5. Instead, the source of the appropriate legal standard in this case

is the language of 18 U.S.C. § 1595, as it is cited in the title of Count One of the Plaintiff's Complaint. ECF No. 1 at ¶ 88-89. Accordingly, the Movant is liable for Plaintiff's damages if they: (1) knowingly benefitted; (2) from participation in a venture; (3) that they knew *or should have known* engaged in sex trafficking." 18 U.S.C. § 1595(a) (emphasis added).

The Movant's reliance on *Noble* is misplaced because the plaintiff in *Noble* did not allege a single financial beneficiary claim under § 1595 but instead brought only perpetrator claims against the defendants in that case.[4] As discussed above, perpetrator claims are separate and distinct from financial beneficiary claims. Because the plaintiff's claims in *Noble* alleged only that the defendants were the actual perpetrators of violations of § 1591, the plaintiff had to prove those violations against the defendants. Since § 1591 is a criminal statute, a showing of at least a reckless disregard is explicitly required, and the holding in *Ayfare* applied.

By distinct contrast, § 1595 does not require such a showing of intent and does not restrict the realm of possible civil suits to only those against defendants who have actually violated § 1591 themselves. "Reckless disregard" and "should have known" are not interchangeable levels of scienter. Reckless disregard is conscious indifference, while "should have known" is the well-known standard of knowledge, also referred to as constructive knowledge. *See Brewster v. La Quinta Inns, Inc.*, 142 F.3d 432 (6th Cir. 1998) (analyzing a hotel's duty of care under Louisiana negligence law, the Sixth Circuit explained the standard as "should have known (*i.e.*, had constructive knowledge)"). Constructive knowledge is the "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019).

---

[4] The counts pled in *Noble* were specifically: (1) "Violation of 18 U.S.C. § 1591"; (2) Participation in a Venture in Violation of 18 U.S.C. § 1591"; (3) Participation in a Venture in Violation of 18 U.S.C. § 1591"; (4) Aiding and Abetting Violation of 18 U.S.C. § 1591"; (5) Aiding and Abetting Violation of 18 U.S.C. § 1591". *Noble v. Weinstein*, No. 1:17-cv-09260-RWS (Feb. 20, 2018).

For a criminal conviction under § 1591 a defendant's knowledge of the nature of the sex trafficking venture is understandably required. This requisite *mens rea* is referenced explicitly in the definition of § 1591(e) (4): "The term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a) (1)." All of the definitions in § 1591 are expressly limited to the criminal context at issue in § 1591 by subsection § 1591(e) which deliberately begins, "*In this section...*" (emphasis added).

While courts at times may "presume that the same term has the same meaning when it occurs here and there in a single statute," that presumption is not "irrebutable" and "readily yields whenever there is such variation in the context in which the words are used as to reasonably warrant the conclusion that they were employed in different parts of the act with different intent." *See Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (quoting *Atlantic Cleaners and Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). The Supreme Court has unanimously agreed that it "understand[s] that '[m]ost words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section.'" *Id.* (quoting *Atlantic Cleaners and Dyers, Inc. v. United States*, 286 U.S. at 433). These principles are especially true when "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240 (1989)).

Therefore, the plain language of § 1595 irrefutably demonstrates that the definition of "participation in a venture" from § 1591(e)(4) cannot apply to "participation in a venture" as used in § 1595(a). If the definition from § 1591 did apply to § 1595(a) then civil liability would be

11

limited to criminal perpetrators and most of § 1595(a) – everything in parentheses – would be rendered meaningless. Because if a person knowingly supports or facilitates a violation of § 1591(a)(1) as the definition in § 1591(e)(4) provides, then that person has criminally violated § 1591(a)(2) and is in fact a perpetrator.  Therefore this interpretation cannot apply because courts must "avoid a reading which renders some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995).  *See also United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir. 2005) ("statutes should be construed so that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *United States v. Aldrich*, 566 F.3d 976, 978–79 (11th Cir. 2009))). As such, the words "should have known" in § 1595(a) were understandably not included by Congress for no purpose.

The Movant ignores the specific and clear differences between criminal liability and associated civil claims against perpetrators under § 1591, and the civil liability of beneficiaries under § 1595.  In order to state a claim for the latter, the Plaintiff need only allege that the Movant should have known they were benefitting financially from a sex trafficking venture. And the Plaintiff has so alleged.

The Movant also argues the Plaintiff cannot show some participation in the sex trafficking act venture. ECF No. 40 at 5. Again, as discussed herein, in order to state a financial beneficiary claim the Plaintiff does not have to show that the Defendant participated in any sex trafficking act itself. Here, the sex trafficking venture which exploited the Plaintiff took place in the hotel rooms owned and/or operated by the Movant.  The sex trafficking venture is inextricably intertwined with the Movant's provision of hotel rooms as the resulting financial benefits are from the provision of hotel rooms in which the sex trafficking of the Plaintiff occurred.  The defendants in the instant matter are in the business of renting hotel rooms. Even if the rooms are rented to a sex trafficker

so that they can comfortably advertise the sale of the Plaintiff for commercial sex in said rooms, and sex buyers know they can frequent the Movant's hotel properties to purchase sex with no repercussions, the primary directive of the enterprise is fulfilled. The Movant knows that sex trafficking occurs in hotel rooms and more specifically in *their* hotel rooms, and by harboring it and profiting from it in their normal course of business they arguably become part of the sex trafficking venture.  Nevertheless, the threshold for liability in the instant case is simply premised on whether the Movant should have known about the sex trafficking venture operating out of their hotels and from which they financially benefitted.

The Movant's motion to dismiss suggests that their penultimate defense is that their participation in a sex trafficking venture, by renting rooms to the sex trafficking venture and financially benefitting from those rentals, cannot amount to liability because they turned a blind eye to sex trafficking in their businesses.  ECF No. 40 at 5  While willful blindness is no doubt the industry status quo, Congress determined in 2008 that willful blindness was no longer a defense to liability under § 1595.  *See also Global-Tech Appliances v. SEB*, 131 S. Ct. 2060, 2070 (2011) (applying the established criminal law doctrine in the civil context in a patent case and stating, "It is also said that persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts.") (internal citations omitted).

## VI.     THE PLAINTIFF'S COMMON LAW CLAIMS PREVAIL
### A.  Negligence and Premises Liability (Counts III and IV)

As an innkeeper, the Movant has a special relationship with the Plaintiff.  *Bailey v. United States*, 115 F. Supp.3d 882, 883 (N.D. Ohio 2015) (citing Restatement (Third) of Torts: Phys. & Emot. Harm § 40).  An innkeeper in Ohio must exercise reasonable care, with its liability founded in the same principles governing individuals entering premises at the owner's invitation and injured through a dangerous condition on the premises. *Mizenis v. Sands Motel, Inc*., 362 N.E.2d

661, 664 (6th Dist.1975).  Historically there was greater responsibility proscribed to innkeepers. This duty consisted of protecting guests against unreasonable risk of physical harm, and providing first aid after knowledge or reason to know that a guest is ill or injured, and, "to care for them until they can be cared for by others." *See* Restatement (Second) of the Law of Torts, § 314A (2). At common law, the degree or kind of care required of an innkeeper "is the highest kind of care known to the law, like that required of a common carrier, and it is imposed by public policy." *Fuller v. Coats*, 18 Ohio St. 343, 348 (1868). The source of the innkeeper's liability still holds true in that "the wayfaring traveler...exposed on his journey… ha[s] little protection when [seeking] at night temporary refuge at the wayside inns …and [that] hence there grew up the salutary principle that a host owed to his guest the duty not only of hospitality, but also of protection." *Crapo v. Rockwell*, 48 Misc. 1, 94 N. Y. Supp. 1122 (1905).

Under Ohio law specifically, the once respected innkeeper owes "a standard of ordinary care in providing security for its guests [and] [i]f there are special circumstances such as previous assaults in the motel or that the motel is located in a high crime area, ordinary care may require additional security measures." *Meyers v. Ramada Inn of Columbus* 14 Ohio App.3d 311, 313 (10th Dist. 1984). The Complaint sets forth a myriad of examples of inadequate guest safety that would create liability for the defendants under a traditional analysis of an innkeeper's duties. ECF No. 1 at ¶ 96 and 106.  The Movant failed to exercise reasonable care in their acts, omissions, and commissions, as outlined in the Complaint and above in regards to the dangerous condition that is the prevalence of sex trafficking at the Movant's hotels. *Id.*  The Plaintiff included references to news articles and review sites in the Complaint to effectively demonstrate the common, easily accessible knowledge that sex trafficking occurs regularly at properties such as the Movant's.

Plaintiff alleges and maintains that the Movant knew or should have known of the substantial risk of harm, in the form of human trafficking, occurring on its premises, which under Ohio law is sufficient to impose upon them a duty to protect the Plaintiff. *Heimberger v. Zeal Hotel Group Ltd.*, 42 N.E. 3d 323, 330 (Ohio Ct. Apps. 2015). *Heimberger* employs that "the foreseeability of criminal acts, examined under the test of whether a reasonably prudent person would have anticipated an injury was likely to occur, will depend on the totality of the circumstances…consider[ing] prior similar incidents, the propensity for criminal activity too occur on or near the location of the business, and the character of the business." *Id* at 330. The Plaintiff's complaint describes how entrenched human trafficking is in the hospitality industry and how there have been routine efforts to educate the hospitality industry on identifying and preventing human trafficking at their hotels. *See* ECF No. 1, 5-12. This state of affairs for the hospitality industry, in conjunction with the media coverage of human trafficking at similar Best Western© properties, makes human trafficking a foreseeable harm from which the Movants have a duty to protect their guests. Furthermore, since human trafficking is a foreseeable harm, reasonable care by the Movants would include adequately training staff to identify *all* of the possible signs of human trafficking and taking reasonable security measures.

### B.  Unjust Enrichment (Count V)

In stating her claim for unjust enrichment, the Plaintiff has adequately alleged that: (1) Plaintiff conferred a benefit upon the Movant; (2) the Movant had knowledge of the benefit; and (3) it would be unjust for the Movant to keep the benefit without payment. *Hambleton v. R.G. Barry Corp.*, 465 N.E. 2d 1298, 1302 (Ohio 1984). As stated by the Ohio Supreme Court, "unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 14 N.E.2d 923, 927 (1938). The Movant

financially benefitted and enriched themselves at the Plaintiff's expense through increased profits from renting rooms to those looking to sexually exploit Plaintiff; increased profits due to lower operation costs by failing to implement human trafficking training for their employees; increased profits from refusal to install proper security devices in common areas of the premises; and many other benefits at the expense of the Plaintiff's safety that is owed to her as a guest on the premises. *See* ECF No.1 at ¶ 113. The Movant is alleged to have known the pervasiveness of human trafficking on similar properties under the same flag. *Id.* at ¶¶ 66-76. There have been several arrests made at Best Western® branded hotels throughout the United States, and even in Ohio and the Sixth Circuit, for sex trafficking operations. *Id.* at ¶¶ 68-75. Therefore, it is unjust for the Movant to keep the financial benefit from the rental of rooms in which the Plaintiff was trafficked without payment to the Plaintiff. It is inequitable for the Movant to retain such increased profits obtained through the Movant's knowledge of the trafficking and sexual exploitation of the Plaintiff.

## VII.     VENUE IS PROPER IN THE SOUTHERN DISTRICT

The federal venue statute, 28 USC 1391(b)(1), clearly states that a civil action may be brought "in a judicial district in which any defendant resides, if all defendants are resident of the State in which the district is located." The movant failed to also include 28 USC 1391 (d) which explains that:

> For purposes of venue…in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction … such corporation shall be deemed to reside in *any* judicial district …within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Defendant Best Western International, Inc. has considerable contacts with the State of Ohio and it is the Plaintiff's position that by having a registered agent in Ohio, filing with the Ohio

Secretary of State, and operating 44 Best Western© hotels all over the State of Ohio, Defendant Best Western International, Inc. has purposefully availed itself of the State of Ohio's laws. *See* ECF No. 1 at ¶ 13. Furthermore, since the actions giving rise to the instant claims occurred at a Best Western© Hotel in Ohio this Court has specific personal jurisdiction over Defendant Best Western International, Inc. Consequently, since Ohio is a multiple district state, Defendant Best Western International, Inc. would be deemed a resident of the district where it has the most substantial contacts or where it would satisfy a personal jurisdiction analysis and because Defendant Best Western International, Inc.'s registered resident agent is located in the Southern District of Ohio at 50 West Broad Street, Suite 1330, Columbus that alone tips the scales to determine that is where Defendant Best Western International, Inc. is deemed to be a resident of. As a result, venue is clearly proper in the Southern District of Ohio. It is also important to consider that this case is closely related to three other cases currently pending in the Southern District of Ohio which share similar factual allegations and legal issues.

## **CONCLUSION**

The Plaintiff's Complaint thoroughly and robustly states the factual basis for her claims and otherwise properly states her claims for relief pursuant to § 1595 of the TVPRA and at common law. In the event the Court is inclined to grant some or all of the Movant's request for dismissal, the Plaintiff would ask for the right to re-plead following a course of well-cabined discovery. Under these circumstances, leave to amend should be freely granted in the interests of justice and fairness pursuant to Fed. R. Civ. P. 15. As the Plaintiff has asserted throughout her opposition, the Movant's request for dismissal is unfounded and contradicted by the allegations stated in the Complaint. This is especially true given that Defendants in the case have already

found this Complaint to be facially sufficient as evidenced by their Answers on file. Accordingly, the motion to dismiss is due to be denied in its entirety.

WHEREFORE premises considered, the Plaintiff respectfully requests that this Honorable Court deny the Movant's request for dismissal and enter an Order denying Defendant Lorain-Elyria Motel, Inc.'s motion to dismiss the Plaintiff's Complaint.

Done this the 30th day of September, 2019.

**RESPECTFULLY SUBMITTED,**

**PLAINTIFF,**
**By Her Attorneys,**

*/s/ Samantha A Breakstone*
Samantha A. Breakstone, Esq.  *(Pro Hac Vice)*
Paul Pennock, Esq. *(Pro Hac Vice)*
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003
T: (212) 558-5672
F: (212) 344-5461
Email: sbreakstone@weitzlux.com
Email: ppennock@weitzlux.com

and

Pamela Borgess, Esq. (0072789)
BORGESS LAW, LLC
6800 W. Central Ave. Ste E
Toledo, OH 43617
T: (567) 455-5955
F: (567) 661-1795
Email : pborgess@BorgessLaw.com

and

Kimberly A. Dougherty, Esq. *(Pro Hac Vice)*
Andrus Wagstaff, P.C.
19 Belmont Street
South Easton, MA 02375
T: (508) 230-2700

18

F: (303) 376-6361
Email: kim.dougherty@andruswagstaff.com

and

Megan A. Bonanni, Esq. *(Pro Hac Vice)*
Pitt, McGehee, Palmer & Rivers, P.C.
117 West 4th Street, Suite 200
Royal Oak, MI 48067
T: (248) 939-5081
Email: mbonanni@pittlawpc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of September, 2019, I electronically filed the foregoing

Response to Defendant Lorain-Elyria Motel, Inc.'s Motion to Dismiss with the Clerk of Courts

using the CM/ECF systems, which will send notification of such filing to CM/ECF participants.

<div style="margin-left:40%">

*/s/ Samantha A Breakstone*

Samantha A. Breakstone, Esq. *(Pro Hac Vice)*
Paul Pennock, Esq. *(Pro Hac Vice)*
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003
T: (212) 558-5672
F: (212) 344-5461
Email: sbreakstone@weitzlux.com
Email: ppennock@weitzlux.com

</div>

Jennifer Hageman, Esq.
Paul J. Cosgrove, Esq.
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2309
Telephone: (513) 698-5000
Fax: (513) 698 -5001
Email: jhageman@ulmer.com
Email: pcosgrove@ulmer.com

Sarah M. Benoit, Esq.
Ulmer & Berne LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215
Telephone: (614) 229-0016
Facsimile: (614) 229-0017
Email: sbenoit@ulmer.com

Constantine J. Passodelis, Esq.
Jones Passodelis, PLLC
Gulf Tower, Suite 3410
707 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 315-7272
Fax: (412) 315-7273
Email: dpassodelis@jonespassodelis.com

*Attorneys for Defendant, Best Western International, Inc.*

Kenneth A. Calderone, Esq.
Catherine E. Nagy, Esq.
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, Ohio 44333
Telephone:  (330) 670-7340
Fax:  (330) 670-7458
Email: kcalderone@hcplaw.net
Email:  cnagy@hcplaw.net

*Attorneys for Defendant, Lorain-Elyria Motel Inc. d/b/a Best Western Inn*
William B. Benson, Esq.
Matthew Stephen Teetor, Esq.
Molly R. Gwin, Esq.
Isaac, Wilkes, Burkholder & Teetor, LLC
2 Miranova Place, Suite 700
Columbus, OH 43215

*Attorneys for Defendant, SRI Ram, LLC d/b/a Economy Inn*

Jonathan P. Blakely, Esq.
P.O. Box 217
Middlefield, OH 44062
(440) 339-1201
(440) 632-9091 Fax
jblakelylaw@windstream.net

*Attorneys for Defendant, BAPA Associates, Inc. d/b/a Motel 9*