## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Jane Doe S.W., | ) | Case No. 2:19-CV-1194 |
| | ) | |
| Plaintiff, | ) | Judge Algenon L. Marbley |
| | ) | |
| vs. | ) | Magistrate Judge Elizabeth Preston Deavers |
| | ) | |
| Lorain-Elyria Motel, Inc., *et al.,* | ) | **DEFENDANT LORAIN-ELYRIA MOTEL,** |
| | ) | **INC. REPLY IN SUPPORT OF MOTION** |
| Defendants. | ) | **TO DISMISS OR, ALTERNATIVELY,** |
| | ) | **MOTION TO TRANSFER** |
| | ) | |
| | ) | |

## I.   COUNT ONE: TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT

### A. Plaintiff has not stated a claim on which relief can be granted simply because some Defendants answered the complaint.

Plaintiff opposes LEM's motion by arguing first that her complaint is factually sufficient

against LEM because some co-Defendants have answered the complaint.  But Plaintiff can point

to no federal rule or case that bases a decision on a Rule 12 motion on whether *other* defendants

filed an answer.

Affirmative defenses may be asserted and preserved by filing an answer.  The mere fact

that a defendant files an answer doesn't waive an affirmative defense.  Certainly one party filing

an answer doesn't negate a *different* party's defense.  Indeed, one co-Defendant—SRI RAM,

LLC dba Economy Inn—answered the complaint but then filed a Rule 12(c) motion for

judgment on the pleadings. (Doc #61).  Filing an answer didn't prevent that Defendant from

disputing the validity of Plaintiff's complaint. Defenses may be raised in different ways. The fact that some Defendants chose to answer while LEM chose to file a motion does not affect the motion.

### B. The complaint's factual sufficiency rests on three paragraphs.

The weakness of Plaintiff's pleading is highlighted on pages 2-3 of Plaintiff's response. Out of the 115-paragraph complaint, Plaintiff points to only three catch-all paragraphs to argue that sufficient facts were pled to support a trafficking claim against LEM. (Doc. #57, pp. 2-3). The three paragraphs are as follows:

> 54.  Both traffickers coerced and/or otherwise forced the Plaintiff into sex trafficking by using violence and threats of violence.

> 55.  Despite obvious signs of human trafficking (bruises and physical deterioration) and indicators of commercial sex activity (bottles of lubricants, boxes of condoms, excessive requests for towels and linens, cash payments) the Defendants failed to protect the Plaintiff from foreseeable harm and failed to prevent her continued victimization. Rather, the Defendants knowingly continued to profit from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotels.

> 56.  On average, three to five Johns would enter and leave the hotel guest room on a daily basis.

(Three other referenced paragraphs—66, 88, and 89—contain no factual allegations but are simply legal conclusions parroting the language of the TVPRA.) (Doc. #57, p. 3).

The three paragraphs at issue are generalized allegations directed toward *all* Defendants. The paragraphs are not specifically tailored to LEM. Thus, it is unclear whether the laundry list of actions alleged in those paragraphs happened at LEM, Economy Inn, Motel 9, Best Western headquarters, or some combination thereof.

Even if all alleged conduct occurred at LEM, Plaintiff still fails to connect such allegations to any wrongdoing by LEM. That is, while Plaintiff claims that there were "signs" of trafficking, there is no allegation that LEM was in fact on notice of these signs or that these signs signaled trafficking as opposed to other regular guest activity.

For example, Plaintiff alleges that she had bruises on her body but does not indicate where the bruises were on her body, whether they were visible to LEM employees, or whether their size or quantity would suggest something illicit as opposed to a bruise one may get from an accident or other incident.

Plaintiff doesn't indicate whether bottles of lubricant or condoms were visible to LEM employees when brought into the hotel (or concealed in luggage or other bags), whether such items were left visible in the room and could be seen by housekeepers (if housekeepers were even permitted to enter), or whether the amount of lubricant or condoms was different or excessive from any other hotel guest that may be on a honeymoon or having consensual relations.

Likewise, Plaintiff doesn't contend that paying for a room with cash is a method of payment exclusively reserved to traffickers or that LEM failed to obtain registration identification for each of its guests that would still permit guests to be "tracked." Plaintiff does not discuss whether LEM was aware of the amount of people entering Plaintiff's rooms or what would differentiate them as "Johns" as opposed to guests. In summary, the mere fact that signs of trafficking may have existed doesn't mean that LEM knew or should have known that trafficking was occurring. Plaintiff's complaint fails to allege such knowledge.

Unlike in *M.A., et al. v. Wyndham Hotels & Resorts, Inc., et al.*, 2019 WL 4929297 (S.D. Ohio), there is no allegation in this case that Plaintiff's trafficker has been indicted and sentenced through the criminal process, that Plaintiff was escorted in front of LEM employees, that any LEM

3

hotel staff member saw Plaintiff in a deteriorated state, or that Plaintiff screamed for help. There is further no allegation—beyond conclusory statements—that LEM had reason to know about any alleged trafficking. For instance, there is no allegation evidence of a prior police report against LEM or police reports or incidents involving trafficking at LEM's hotel. Plaintiff doesn't even allege any rumor of trafficking at LEM through news articles or online reviews.

Lacking any specific allegations against LEM that would suggest wrongdoing, Plaintiff resorts to lengthy descriptions of the history of trafficking in America. But history lessons and statistics cannot satisfy the *Iqbal/Twombly* standard. After stripping away the generalized allegations that have no relevant bearing on LEM, Plaintiff's complaint is but a formulaic recitation of the elements of each cause of action, without any proper factual allegations to pass legal muster.

### C. There is no "similarly situated" pleading exception. Even if there were, Defendants are not similarly situated.

Plaintiff suggests in her brief that it is appropriate to lump Defendants together in the aforementioned three paragraphs because Defendants are "similarly situated"--i.e., the same conduct occurred at each establishment but at different times. But Plaintiff doesn't allege in her complaint that Defendants are "similarly situated." Nor does *Twombly/Iqbal* contain any pleading exception when the defendants are "similarly situated." (Doc. #57, p. 4).

*Brockman*, which Plaintiff tries to distinguish, is directly on point and is no different than this case. As in this case, all defendants in *Brockman* were accused of committing the same wrongful environmental acts, albeit at different locations. This court was clear in explaining the impropriety of referring to defendants as a collective whole in a complaint:

> A number of courts have concluded that a complaint's collective references to "the defendants" does not meet the pleading requirements of *Twombly* and *Iqbal* because it fails to give each defendant sufficient notice of the misconduct alleged against him. In *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008), a civil rights case filed against a number of individual defendants

pursuant to 42 U.S.C. § 1983, the Court held that "[g]iven the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.* at 1520. Similarly, in *Arar v. Ashcroft*, 585 F.3d 559 (2nd Cir. 2009), a *Bivens* action against individual federal officials, the Court held that the complaint's undifferentiated allegations concerning "Defendants" did not comply with *Twombly* and *Iqbal* because it failed to link the alleged misconduct to any individual defendant. *Id.* at 569. The district court in *Carter v. Dolan*, No. 08 C 7464, 2009 WL 1809917 (N.D. Ill. June 25, 2009), reached substantially the same conclusion. *See id.* at *3 ("A complaint that refers to multiple police officer defendants collectively as 'defendant officers' in each of the factual allegations does not provide each defendant officer with sufficient notice of the wrongdoings alleged."). Finally, and importantly, in *In re Travel Agent Comm'n Antitrust Lit.*, 583 F.3d 896 (6th Cir. 2009), the Sixth Circuit called the complaint's "vague allegations" to "defendants" or "defendants' executives" "indeterminate assertions" that did not comply with *Twombly* and failed to give defendants adequate notice of their alleged conspiratorial conduct.

*Brockman v. Chevron USA, Inc.*, S.D. Ohio No. 1:09-CV-656, 2010 WL 11538073, *2.

Plaintiff's improper group pleading is exacerbated by the fact that Plaintiff cannot satisfy her own "similarly situated" test. The clearest example is if one were to compare Best Western to the defendant-hotel owners and operators in this case. As explained in its filings, Best Western is a non-profit membership association based in Arizona. Best Western owns no properties in Ohio, where alleged trafficking occurred.

Thus, Plaintiff's theory of liability against Best Western is through a vicarious liability-type argument based on Best Western's alleged level of oversight and control over LEM's daily activities or representations on which Plaintiff relied. This vicarious liability-type theory is markedly different from any theory against LEM, Economy Inn, and Motel 9, which were owners of the hotels in which alleged trafficking occurred.

Best Western is clearly in an entirely different position than LEM as a hotel owner and operator. Yet instead of delineating which facts apply to Best Western as opposed to LEM,

5

Plaintiff simply addresses all allegations against "Defendants" as a whole. In other words, Best Western, located over 2,000 miles away, is also accused of failing to notice bruises on Plaintiff. This precise situation, where separate Defendants have vastly different interests and relationships with Plaintiff, highlights the importance of the *Iqbal/Twombly* standard and the impropriety of group pleading. Plaintiff's complaint fails to meet that standard and fails to state a claim on which relief can be granted against LEM.

### D. Plaintiff admits that she has not alleged that LEM participated in a venture.

Even if Plaintiff had asserted particularized allegations against LEM, Plaintiff still fails to establish a prima facie claim under the TVPRA because she has not alleged any facts to demonstrate that LEM took affirmative or overt acts to further any trafficking venture. The conduct in the aforementioned three paragraphs does not demonstrate that LEM was actively participating in any venture.

Plaintiff argues that she need not show any "intentional" action on the part of LEM because her claim rests on a "beneficiary" as opposed to "perpetrator" theory. Thus, Plaintiff claims that she "need only allege that the Movant should have known they were benefitting financially from a sex trafficking venture" and "does not have to show that the Defendant participated in any sex trafficking act itself." (Doc. #57, pg 12).

Plaintiff's argument overlooks the statutory language that defines a "beneficiary" claim under 18 U.S.C. §1595(a). The statute requires "participation in a venture":

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from ***participation in a venture*** which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

(Emphasis added).

The inclusion of the phrase "participation in a venture" simplifies the matter because this phrase has already been examined and explained by the Sixth Circuit in *U.S. v. Afyare*, 632 Fed.Appx. 272, 286 (6th Cir. 2016). *Afyare* held that "participation in a venture" does *not* mean simply being aware of "obvious signs of human trafficking and indicators of commercial sex activity" and turning a blind eye to such conduct. Rather, a plaintiff must show actual participation in the trafficking, such as overt conduct that furthered the trafficking venture. *Id*. But Plaintiff's complaint is devoid of any factual allegations to show that LEM affirmatively and overtly furthered any trafficking venture.

Plaintiff argues that the phrase "participation in a venture" should not apply to a civil claim under 18 U.S.C. §1595(a) because *Afyare* involved a criminal case and *Noble v. Weinstein*, 335 F.Supp.3d 504 (S.D.N.Y.2018) involved a perpetrator theory. (Doc. # 57, pg 9). But *Afyare* and *Noble* do not distinguish between criminal and civil cases or beneficiary or perpetrator theories. Nor does §1595(a) suggest that the exact words and phrases found in §1591 of the TVPRA should be read differently. Words and phrases in the same statutory scheme should be read and construed in the same way for the sake of uniformity. If the legislature intended for "participation in a venture" to read differently, it would have stated so. Where, as here, the language is the same, the language must be interpreted the same. Since the phrase "participation in a venture" is a requirement of civil claims, *Afyare*'s interpretation governs.

Plaintiff's complaint fails to establish any facts to demonstrate that LEM participated in a trafficking venture. In fact, Plaintiff's response brief essentially admits that she has no facts supporting a participation in a venture because she is not required to present such facts. Thus, dismissal of Plaintiff's TVPRA claim is warranted.

## II.    COUNTS TWO AND THREE: NEGLIGENCE AND PREMISES LIABILITY

Plaintiff's approach with respect to her TVPRA claim is employed for claims of negligence and premises liability. Instead of setting forth specific allegations against LEM, Plaintiff provides a boilerplate list of legal conclusions under paragraphs 96 and 106 directed to all Defendants—even Best Western, an entity located 2,000 miles away from the alleged conduct at issue.

Plaintiff also fails to connect otherwise benign conduct—such as refusing maid service or using a side exit—to a sign of trafficking that in fact occurred at LEM and was recognized as such. Tellingly, while addressing alleged trafficking incidents that occurred at other, unaffiliated Best Western properties, Plaintiff cannot cite a single prior incident or complaint of alleged trafficking at LEM.

Lumping Defendants together and asserting legal conclusions or conclusory statements regarding the elements of a claim are insufficient to meet the pleading standard of *Twombly* and *Iqbal*. Plaintiff's negligence and premises liability claims should be dismissed.

## III.   COUNT FOUR: UNJUST ENRICHMENT

Finally, nothing in Plaintiff's complaint shows that she conferred a benefit on LEM, that LEM knew of the benefit, or that it would be unjust for LEM to keep the benefit. There is no allegation that Plaintiff paid for the room or that LEM failed to provide that room to Plaintiff.

Further, there is no allegation of any additional benefit conferred on LEM that should be returned to Plaintiff, e.g., additional rooms booked at LEM due to Plaintiff's presence or additional "off-the-books" payments to LEM employees above and beyond the standard room rate. Certainly, Plaintiff's remark that arrests have been made at other Best Western-branded hotels is no basis for a claim of unjust enrichment against LEM. (Doc. # 57, pg 16).

## IV.   VENUE IS IMPROPER IN THIS DISTRICT

8

Alternatively, this case should be dismissed or transferred to the Northern District of Ohio. Plaintiff's argument that venue is proper in the Southern District is premised solely on the assumption that Best Western remains a Defendant. LEM incorporates Best Western's original Motion to Dismiss and Reply in Support of its Motion to Dismiss for the law and arguments demonstrating that Best Western is not subject to jurisdiction in Ohio under a general or specific jurisdictional analysis. Without Best Western, this case is not properly venued in this district. The case should thus be dismissed or transferred to the Northern District of Ohio, where the alleged trafficking took place.

## V.    CONCLUSION

Plaintiff's complaint should be dismissed as to LEM because it fails to state a viable, plausible claim under the *Twombly/Iqbal* standard. Alternatively, the case should be dismissed (or transferred to the Northern District) due to improper venue.

Respectfully submitted,

/s/ *John R. Chlysta*
Kenneth A. Calderone (0046860)
John R. Chlysta (0059313)
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, OH  44333
Telephone:  (330) 670-7324 / (330) 670-7305
Facsimile:  (330) 670-7440 / (330) 670-7442
Email:  kcalderone@hcplaw.net
            jchlysta@hcplaw.net

## CERTIFICATE OF SERVICE

This document was filed on October 14, 2019, using the court's CM/ECF system, which will send notification of such filing to all parties. Parties may access this document through the Court's electronic filing system. Copies of this filing were mailed to the parties not on the Court's electronic filing system.

/s/ John R. Chlysta

<<HCP #1073850-v1>>

10