## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **JANE DOE S.W.,** | : |
| | : **Case No. 2:19-CV-1194** |
| **Plaintiff,** | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : |
| | : **Magistrate Judge Deavers** |
| **LORAIN-ELYRIA MOTEL, INC.,** *et al.*, | : |
| | : |
| **Defendants.** | : |

### OPINION & ORDER

This matter is before the Court on Defendant Best Western International, Inc.'s Motion to Dismiss (ECF No. 29) and Defendant Lorain-Elyria Motel, Inc.'s Motions to Dismiss or, alternatively, Motion to Transfer (ECF No. 40). For the following reasons, Defendants' Motions are hereby **DENIED.**

### I. BACKGROUND

Plaintiff, Jane Doe S.W. ("Doe"), alleges she was trafficked for sex beginning in 2017 at the Best Western and Motel 9 properties in Elyria, Ohio and the Economy Inn property in Cuyahoga Falls, Ohio. (ECF No. 1 at ¶ 4). Plaintiff now seeks to hold these hotels liable under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). Plaintiff also brings state law claims for negligence, premises liability, and unjust enrichment.

Plaintiff alleges that these hotel Defendants knew that sex trafficking occurred frequently on their properties and failed to prevent it, and also that they knew or should have known of Doe's trafficking. Plaintiff points to behavior that she alleges hotel staff should have recognized as signs of her trafficking: physical signs of human trafficking including "bruises and physical deterioration," indicators of commercial sex activity such as "bottles of lubricants, boxes of

condoms, excessive requests for towels and linens, cash payments," and the presence of three to five Johns entering and leaving the hotel guest room per day. (ECF No. 1 at ¶¶ 55, 56). Doe alleges that these hotels and their parent companies did not take adequate measures to prevent human trafficking and "demonstrated willful blindness to the rampant culture of sex trafficking." (*Id.* at ¶ 79).

## II. STANDARD OF REVIEW

Defendants both bring motions to dismiss Plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendant Best Western International, Inc. ("Best Western") also moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Defendant Lorain-Elyria Motel, Inc. ("LEM") moves to dismiss Plaintiff's complaint for improper venue under Fed. R. Civ. P. 12(b)(3) or, in the alternative, moves the Court to exercise its discretion to transfer the case to the Northern District of Ohio.

### A. Personal Jurisdiction

Plaintiff bears the burden of establishing that personal jurisdiction exists over a defendant. *Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 537-38 (S.D. Ohio 2012) (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir.2007)). Where, as here, "the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls*, 503 F.3d at 549 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir.1988). Plaintiff can make this showing by "establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support

jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002) (quoting *Provident Nat'l Bank v. California Federal Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In deciding a Rule 12(b)(2) motion, the Court "construe[s] the facts in the light most favorable to the non-moving party," and "**does not weigh** the controverting assertions of the party seeking dismissal." *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996) (emphasis in original).

## B.  Venue

A complaint will be dismissed under Fed. R. Civ P. 12(b)(3) if venue is improper. Venue is proper under 28 U.S.C. § 1391(b) in:  (1) any district in which the defendant resides, if all defendants are residents of the state; (2) a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) if there is no other district where the action may be brought so long as the court has personal jurisdiction over the defendant. Even if venue is proper under § 1391(b), a court may exercise its discretion to grant a motion to transfer venue under 28 U.S.C. § 1404(a) "if the transfer would further the convenience of the parties and the witnesses and be in the interest of justice." *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, No. 2:06-CV-0937, 2007 WL 2781669, at *2 (S.D. Ohio Sept. 24, 2007). On a motion to transfer, "the plaintiff's choice of a forum is entitled to considerable weight, and, consequently, the party moving for a change of venue must demonstrate that the interests served by 28 U.S.C. § 1404(a) clearly favor a change of venue." *Id.* at *3 (citing *Sun Oil Co. v. Lederle,* 199 F.2d 423 (6th Cir.1952)).

## C.  Failure to State a Claim

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Such a motion "is a test of the

plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. LAW & ANALYSIS

### A. Personal Jurisdiction

Defendant Best Western first moves to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (ECF No. 29 at 4-8).

Personal jurisdiction exists over a defendant "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Bird v. Parson*, 289 F. 3d 865, 871 (6th Cir. 2002) (internal citations omitted). Personal jurisdiction over a defendant may be general or specific, depending on the nature of the defendant's contacts with the forum state. *Bird v. Parson*, 289 F. 3d 865, 873 (6th Cir. 2002). General jurisdiction exists when a defendant's contacts are sufficiently "continuous and systematic" to justify jurisdiction over claims unrelated to those contacts. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The "paradigm all-purpose forums" for corporate defendants are its place of incorporation or its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2015). Specific personal jurisdiction exists over an out-of-state defendant who has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires*, 564 U.S. at 293 (quoting *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement et al.*, 326 U.S. 310, 316 (1945)). The plaintiff must show the defendant "purposefully directed his activities at residents of the forum" and "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted).

This Court finds specific personal jurisdiction exists over defendant Best Western. Construing the allegations in the light most favorable to Plaintiff, there are sufficient allegations to indicate Best Western has minimum contacts with the forum state. Doe alleges defendant operates forty-four Best Western branded hotels throughout the state of Ohio. (ECF No. 1 at ¶ 13); (ECF No. 34 at 29). Plaintiff alleges that as a hotel parent company, defendant was willfully

blind to the prevalence of sex trafficking at hotel locations in the forum and failed to train and to monitor adequately its properties. (ECF No. 1 at 65, 79). She alleges defendant receives profits from these hotel locations and that her specific trafficking occurred at a Best Western location in the state of Ohio. (ECF No. 1 at ¶ 11); (ECF No. 34 at 29). These actions constitute purposeful availment, and cannot be characterized as "random, fortuitous, or attenuated." *Opportunity Fund, LLC*, 912 F. Supp. 2d at 539. Plaintiff has alleged a causal connection between Best Western's activities managing hotels in the state of Ohio and the harm to plaintiff as a result of her sex trafficking in these hotel locations. *See id.* at 540. When these first two prongs components of due process are met, the court presumes the reasonableness of specific personal jurisdiction. *Id.* In assessing reasonableness, the court considers several factors including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* (internal citations omitted). Plaintiff is an Ohio resident and her alleged trafficking occurred in the state of Ohio. Any inconvenience to defendant Best Western of litigating in Ohio "does not override the other factors suggesting that personal jurisdiction in Ohio is reasonable." *Id.* at 541.

## B. Venue

Defendant LEM argues Plaintiff's complaint should be dismissed for improper venue or, in the alternative, transferred to the Northern District of Ohio. (ECF No. 40 at 10-12).

Venue is determined by 28 U.S.C. § 1391(b), which provides that a civil action may be brought in federal district court in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For the purposes of venue, an entity defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(2). Corporations "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." § 1391(d). Venue may be proper in multiple courts.

This Court finds that venue is proper in the Southern District because Best Western's contacts would satisfy a personal jurisdiction analysis in this District. LEM argues venue is improper in the Southern District because Plaintiff cannot establish that a substantial part of events or omissions giving rise to the claims occurred in this District under 28 U.S.C. § 1391(b)(2). (ECF No. 40 at 11). However, this argument ignores § 1391(b)(1), which establishes that venue is also proper in "a judicial district in which any defendant resides," and § 1391(d), which establishes residency of corporate defendants is "in any judicial district in which such defendant is subject to the court's personal jurisdiction." Venue is proper in the Southern District because Plaintiff's allegations support a finding that defendant Best Western has had sufficient minimum contacts with the Southern District such that it would be subject to personal jurisdiction in this district. Doe alleges that Best Western's registered resident agent is located in the Southern District, and that Best Western owns and operates hotels in the district. (ECF No. 1

at ¶ 13); (ECF No. 57 at 17). In its reply, LEM argues that "[w]ithout Best Western, this case is not properly venued in this district." (ECF No. 64 at 9). However, this Court explains below, Best Western's Motion to Dismiss is also denied and thus, Best Western remains a Defendant in this case.

Finding venue proper under § 1391, this Court turns to LEM's argument that, even if venue is proper in the Southern District, this Court should exercise its discretion to transfer the case to the Northern District. (ECF No. 40 at 11-12). 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought." In evaluating a motion to transfer venue, a court may consider factors such as access to proof, witnesses' ability to attend trial, enforceability of any judgment rendered, and "prevent[ing] unnecessary waste of time, energy and money and to protect witnesses and the public interest against unnecessary inconvenience and expense." *MJR Intern.*, 2007 WL 2781669 at *2 (citing *Rowe v. Chrysler Corp.*, 520 F. Supp 15 (E.D. Mich. 1981)).

Balancing these factors, this Court declines to exercise its discretion to transfer the case to the Northern District. There is a presumption that "the plaintiff's choice of a forum is entitled to considerable weight." *MJR Intern.*, 2007 WL 2781669 at *3. LEM has not demonstrated that the interests "clearly favor a change of venue," rather than being "slightly more advantageous to the parties or the witnesses." *Id.* This Court has recognized that, where several fora are available, some inconvenience to one or more parties may exist in either forum, and a change in venue is improper if transfer "serves merely to shift the inconvenience." *Id.* (citing *Raymond E. Danto Associates, Inc. v. Arthur D. Little, Inc.*, 316 F. Supp. 1350 (E.D. Mich. 1970)). "[A] generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed

transferee district, is generally insufficient to support a change of venue." *Id.* (citing *Hartford Accident & Indemnity Co. v. Dalgarno Transportation, Inc.*, 618 F. Supp. 1450 (S.D. Miss. 1985)). Because LEM has allegedly only this type of generalized inconvenience—that the alleged trafficking took place at hotel locations in the Northern District, and therefore, relevant documents and witnesses will be located there (ECF No. 40 at 12)—and not "a specific hardship," this Court **DENIES** LEM's Motion to Transfer Venue. *Id.* (citing *AMF, Inc. v. Computer Automation, Inc.*, 532 F. Supp 1335 (S.D. Ohio 1982)).

## C. Failure to State a Claim

Defendants Best Western and LEM move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing Doe has failed to state claims for civil liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), negligence, premises liability, and unjust enrichment. (ECF Nos. 29, 40). The Court will address the sufficiency of each of Plaintiff's claims in turn.

### 1. Civil Liability Under the TVPRA § 1595

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in two cases factually similar to this one. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019); *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).

Like plaintiffs M.A. and H.H., Jane Doe brings claims under 18 U.S.C. § 1595,[1] which sets forth the standard for civil liability under the TVPRA. This Court held in *M.A.* and *H.H.* that

---

[1] 18 U.S.C. § 1595(a) provides: "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this

§ 1595(a) can be a standalone claim, and civil Defendants need not have committed the underlying criminal sex trafficking offense under § 1591.  *M.A.*, 2019 WL 4929297 at *2; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPA "create[] civil liability both for those who face criminal liability for their profiteering and those who do not."); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 U.S. Dist. LEXIS 197819, at *6 (N.D. Ga. Sept. 9, 2014) (the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator to "anyone who 'knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter'")). This Court likewise finds that Doe's allegation that she is a victim of trafficking under § 1591 is enough sufficiently to plead that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss.

The requirements for liability under § 1595(a) on a "beneficiary" theory can be stated as follows: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter."  18 U.S.C. § 1595(a).

### a. Knowing benefit

Defendants contend that they did not knowingly benefit financially from the sex trafficking venture.  Defendant Best Western suggests Plaintiff's claim fails because she has not alleged facts "to support a reasonable interference that BWII knew of the Plaintiff's situation."

---

chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

(ECF No. 29 at 9). But § 1595(a) does not impose an actual knowledge requirement. The first element merely requires that Defendant knowingly receive a financial benefit, not that the perpetrator have actual knowledge of the sex trafficking venture. As this Court found in *M.A.* and *H.H.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 2019 WL 4929297 at \*3; *H.H.*, 2019 WL 6682152 at \*2. *See also Gilbert v. United States Olympic Committee*, No. 18-cv-00981-CMA-MEH, 2019 WL 4727636, at \*16 (D. Colo. Sept. 27, 2019) (finding the forced labor provision of § 1589(b) does not "require[] the party to benefit from the [forced] labor or services for liability to attach").

    b. Knew or should have known the venture was engaged in trafficking

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Defendants argue that Plaintiff's complaint should be dismissed because she has not alleged they had actual knowledge of or recklessly disregarded Doe's trafficking. (ECF No. 29 at 9; ECF No. 40 at 5). As this Court held in *M.A.* and *H.H.*, the plain text of § 1595(a) makes clear that the standard under this section is a negligence standard of constructive knowledge. *M.A.*, 2019 WL 4929297 at \*7; *H.H.*, 2019 WL 6682152 at \*3.

Plaintiff's allegations against Defendants includes the following:

- "Plaintiff was repeatedly trafficked for sex at the Best Western Inn located at 636 Griswold Road in Elyria, Ohio." (ECF No. 1 at ¶ 53).

- "Defendants failed to protect the Plaintiff from foreseeable harm and failed to prevent her continued victimization" by ignoring "obvious signs of human trafficking (bruises and physical deterioration) and indicators of commercial sex activity (bottles of lubricants,

boxes of condoms, excessive requests for towels and linens, cash payments)." (ECF No. 1 at ¶ 55).

- "On average, three to five Johns would enter and leave the hotel guest room on a daily basis." (ECF No. 1 at ¶ 56).

- "Best Western has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the brand has failed to take action to prevent sex trafficking." (ECF No. 1 at ¶ 67).

- "[T]he Best Western brand and its corporate parent have been aware of sex trafficking occurring on Best Western properties through online review websites such as TripAdvisor and www.yelp.com. Online reviews show the pervasiveness of customer reported sex trafficking on Best Western brand properties and Best Western's inattentiveness." (ECF No. 1 at ¶ 76).

This Court must decide whether these allegations are sufficient to state a claim that Defendants knew or should have known the venture was engaged in sex trafficking. This Court finds Plaintiff's allegations are sufficient to allege constructive knowledge. As this Court previously noted, "[s]everal courts have found failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence." *M.A.*, 2019 WL 4929297 at *6 (citing *Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint stated sufficient allegations under § 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape"); *Trollinger v. Tyson*

*Foods, Inc.*, 2007 WL 1574275, at *12 (E.D. Tenn. May 29, 2007) (finding that a "willful blindness policy" could be sufficient to show a RICO violation)). Here, Doe has alleged that Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence. She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation. These allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving a 12(b)(6) Motion to Dismiss.

c. Participation in a venture

The last element requires the Court to decide whether Plaintiff alleged sufficient facts that show Defendants' conduct constituted "participation in venture" under § 1595(a). Doe's trafficker had a sex trafficking venture. The question is whether the Defendant hotels were participating in that venture through "consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendants' hotel properties." (ECF No. 1 at ¶ 89).

Defendant LEM argues Plaintiff has not sufficiently alleged LEM "participated in or furthered the sex-trafficking venture" or "that LEM representatives knew Plaintiff's trafficker, knew Plaintiff herself, or took any overt action to further a sex-trafficking scheme." (ECF No. 40 at 5-6). Best Western likewise argues the TVPRA was intended to target "individuals and entities who actually participate in sex-trafficking." (ECF No. 29 at 10). Plaintiff argues that Defendants inappropriately rely on § 1591 and criminal cases like *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), which differ from civil liability under § 1595. As this Court explained in *M.A* and *H.H.*, Plaintiff's interpretation best comports with the plain text of § 1595. Section 1595 includes a constructive knowledge requirement, and "applying the definition of 'participation in a venture' provided for in § 1591(e) to the requirements under § 1595 would

void the 'known or should have known' language of § 1595." *M.A.*, 2019 WL 4929297 at *7;

*H.H.*, 2019 WL 6682152 at *4. *See also Jean-Charles v. Perlitz*, 937 F.Supp.2d 276, 288–89 (D.

Conn. 2013) (finding liability under § 1595 can attach when an individual participates in a

venture that is not specifically a sex trafficking venture and participation is not direct

participation in the sex trafficking).

This Court therefore found that "participation" under § 1595 does not require actual

knowledge of participation in the sex trafficking itself. The Court must then examine whether

there was "participation in a venture" here. Plaintiff's theory here is that the defendants

"engag[ed] in acts and omissions that [were] intended to support, facilitate, and further

traffickers' transportation and sale of victims for commercial sexual exploitation." (ECF No. 1

at ¶ 88). Doe alleges that the hotels repeatedly rented rooms and thereby "participated in the

trafficking." (*Id.* at ¶ 89). In the absence of a direct association, Plaintiff must allege at least a

showing of a continuous business relationship between the trafficker and the hotels such that it

would appear that the trafficker and the hotels have established a pattern of conduct or could be

said to have a tacit agreement. *See, e.g.*, *In re Polyurethane Foam Antitrust Litigation*, 152 F.

Supp. 3d 968, 983 (N.D. Ohio 2015) (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126

(3d Cir. 1999) (acknowledging that price-fixing can be shown be tacit agreement); *McGuire v.

Lewis*, No. 1:12-cv-986, 2014 WL 1276168, at *6 (finding allegations sufficient "to identify the

individuals alleged to have conspired, to plausibly suggest some joint action among the

individuals, and to explain how the purported joint action led to the alleged deprivation of

[plaintiff's] rights. In particular, they plausibly show a tacit agreement . . . ."). This requirement

also comports with a principle implied in *Ricchio*. There, the First Circuit found sufficient

allegations that, among other things, the trafficker and hotel owner had prior dealings. *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017).

Plaintiff argues that "Defendants knowingly continued to profit from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotels." (ECF No. 1 at ¶ 55). Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the "should have known" language in § 1595(a) would be meaningless. This Court finds Plaintiff has alleged sufficient facts to show Defendants "participated in a venture" under § 1595 by alleging that Defendants rented rooms to people it knew or should have known were engaged in sex trafficking. These acts and omissions by Defendants, Doe alleges, facilitated the sex trafficking venture.

### d. Vicarious Liability

Defendant Best Western contends it does not own, operate, manage, or staff LEM, and in a paragraph, suggests Plaintiff's "variety of indirect liability theories" are just based on "assumption, speculation, and mere conclusory labels." (ECF No. 29 at 4).

As this Court observed in *M.A.*, "[i]t is a long-standing principle of law in Ohio that '[a] principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of the agent's employment and is related to the matters within the agent's authority.'" 2019 WL 4929297 at *9 (quoting *Liggett v. Chesapeake Energy Corp.*, 591 F. App'x 305, 309 (6th Cir. 2014)). In determining whether there is an agency relationship, the question is how much the agent "retained control, or the right to control, the mode and manner of doing the work contracted for." *Beddia v. Goodin*, 957 F.2d 254, 257 (6th Cir. 1992) (quoting *Councell v. Douglas*, 163 Ohio St. 292, 126 N.E.2d 597, 599 (1955)). Doe alleges Best Western

controlled the business operations, management, supervision, administration, and procedures of LEM. (ECF No. 1 at ¶ 60). She alleges an agency relationship was created between LEM and Best Western through profit sharing, standardized training methods, building specifications, standardized rules of operation, regular inspection of the facility, and price fixing. (*Id.* at ¶ 59. These allegations are sufficient to meet the pleading standards of Rule 8.

Similar to the agency relationship inquiry, whether two employers are a joint employer often turns on how much control one exercises over the other. See, e.g., *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (quoting *Metropolitan Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982)) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 594 (6th Cir. 2009) (quoting *United States EEOC v. Custom Companies,* Case Nos. 02 C 3768, 03 C 2293, 2007 WL 734395, at *5–8, 2007 U.S. Dist. LEXIS 16691, at *15–24 (N.D.Ill. March 8, 2007)) (adopting the test  for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations."). The Sixth Circuit has recognized the employer control theory and the agency theory are "essentially the same." *Satterfield v. Tennessee*, 295 F.3d 611, 618 n.6 (6th Cir. 2002).  Although Doe has not alleged additional facts specific to the joint employer allegation, her facts supporting an

agency relationship could plausibly show some element of control to establish joint employer status. Therefore, her allegations meet the pleading standard for the same reasons as above.

### 2. *Negligence and Premises Liability*

Defendants also moved to dismiss Plaintiff's common law claims under Fed. R. Civ. P. 12(b)(6), arguing Doe has failed to state claims for negligence and premises liability. Under Ohio law, the elements of a claim for negligence require the plaintiff show: "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.*, 909 N.E. 2d 120, 122 (Ohio 2009). In the premises-liability context, "the applicable duty is determined by the relationship between the landowner and the plaintiff." *Id.* at 122-23 (citing *Gladon v. Greater Cleveland Regional Transit Auth.* 75 Ohio St. 3d 312, 315 (Ohio 1996)). Hotels have a duty "to exercise ordinary care and to protect [invitees] by maintaining the premises in a safe condition." *Id.* at 123 (quoting *Light v. Ohio Univ.*, 28 Ohio St. 3d 66, 68 (Ohio 1986)). The duty does not extend to "open and obvious" dangers. *Id.*

Plaintiff alleges that Defendants "had a duty to use reasonable care to select, train, supervise, and retain its employees" including "proper training and or supervision relating to the observation, investigation, and reporting of signs of guest misconduct, including, but not limited to, human trafficking and sexual exploitation in or about hotels." (ECF No. 1 at ¶ 92). She further alleges Defendants had a duty to use reasonable care specifically to ensure her safety and security as a hotel guest. (*Id.* at ¶ 93). The allegations in Doe's complaint that support her allegations of negligence and premises liability are as follows:

- Defendants "failed to observe and report signs of guest misconduct." (ECF No. 1 at ¶ 94).

- Defendants failed properly to monitor surveillance cameras and provide adequate security, failed to identify suspicious behavior such as loud noises and sounds of distress, and failed to identify the number of non-guests entering and exiting rooms and signs of drug use. (ECF No. 1 at ¶ 106(a-c) and (e)).

- Defendants failed to monitor their properties for signs of sex trafficking, including: repeated refusal of maid service, repeated use of side or rear exits, the number of visitors entering and exiting rooms, the number of guests present in any particular room, signs of the verbal abuse, physical abuse, restraint and/or confinement, signs of control over an individual and/or an individual's personal property such as identification documents, and physical signs of deprivation. (ECF No. 1 at ¶ 106(d)).

- Defendants failed adequately to respond to guest complaints and failing properly to advise law enforcement of regarding suspicious signs of sex trafficking behavior. (ECF No. 1 at ¶ 106(f) and (g)).

Doe claims the physical harm she was subjected to during her trafficking was "a foreseeable and preventable result of the Defendants' negligence and their failure adequately to train and supervise their employees and to provide adequate security and take reasonable steps to protect JANE DOE S.W." (ECF No. 1 at ¶ 97).

Defendants argue Plaintiff has failed to allege the criminal conduct of her trafficker was foreseeable based on overwhelming facts, because she cites to online reviews concerning other hotel locations and not LEM. (ECF No. 29 at 19-20; ECF No. 40 at 8). Best Western also argues it is not liable as a franchisor because Plaintiff has not alleged facts to show it should have been aware of the dangerous condition or maintained sufficient control over the franchisee. (ECF No.

29 at 17-19). Defendants argue that in the context of criminal acts, hotel owners only have a duty to warn or protect against foreseeable criminal acts of third parties where the totality of the circumstances are "somewhat overwhelming." *Heimberger v. Zeal Hotel Group Ltd.*, 42 N.E. 3d 323, 330 (Ohio Ct. Apps. 2015). *Heimberger* makes clear, however, that this heightened standard applies to the duty to warn or protect. While Defendants may not have had a duty to warn, the hotels still have duty to exercise reasonable care, and this duty does not require actual knowledge of Doe's trafficking. As to Defendants' duty, both the individual hotel location and its parent company have a duty as innkeepers to exercise reasonable care toward Doe and maintain safe premises for her as a business invitee. *Lang*, 909 N.E. 2d at 122-23. Under prong two, Plaintiff has alleged sufficient facts to support her claim that Defendants breached this duty. As detailed above, Doe alleges Defendants failed adequately to monitor and secure their properties, failed to identify signs of trafficking, and failed to respond to guest complaints. (ECF No. 1 at ¶ 106). She also alleged that her injuries from her sex trafficking at the hotel were proximately caused by Defendants' breach of this duty. This is sufficient to survive a 12(b)(6) motion to dismiss.

### 3. Unjust Enrichment

Lastly, Defendants moved to dismiss Plaintiff's unjust enrichment claim, arguing Doe has failed to state claims under Fed. R. Civ. P. 12(b)(6). To make out a claim for unjust enrichment, Doe must allege: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; and (3) it would be unjust for the defendant to keep the benefit without payment." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984).

Plaintiff claims Defendants were unjustly enriched as a result of her sex trafficking. (ECF No. 1 at ¶ 113). She alleges Defendants financially benefited at her expenses by: renting rooms to her traffickers, maintaining lower operation costs and therefore increased profit margins by

failing to implement training, not installing security devices and adequate lighting, not hiring qualified security officers, creating continued customer loyalty with traffickers, and avoiding law enforcement interference. (*Id.* at ¶ 113). Plaintiff alleges Defendants benefited knowingly from Doe's trafficking and others like her and it was "inequitable for them to retain [the benefits] without paying their value." (*Id.* ¶ 114).

Defendants first argue Plaintiff failed to state a claim for unjust enrichment because she has not shown defendants received any benefit. Alternatively, they argue even if they received a benefit in the form of increased profits, Plaintiff has not shown Defendants knew they were receiving profits at Doe's expense. (ECF No. 29 at 21; ECF No. 40 at 9-10).

As to the first prong, Plaintiff's allegations that Defendants received increased profits as a result of decreased security measures and maintaining customer relationships through regularly renting rooms to sex traffickers is sufficient to allege that plaintiff's trafficking conferred a benefit on Defendants. To meet the knowledge requirement, Plaintiff need only allege that Defendants had knowledge of the benefit they received. *See, e.g., Hambleton*, 12 Ohio St. 3d at 183. Contrary to Defendants' suggestion, Doe need not show that Defendants had actual knowledge that the benefit received was at her specific expense. It is enough that she alleges Defendants were aware of profits received by refusing to implement training and security measures and renting hotel rooms to suspected traffickers. If Defendants did in fact receive increased profits because of their failure to exercise ordinary care to prevent sex trafficking on their properties, it would be unjust for them to retain this benefit. Therefore, Plaintiff has alleged sufficient facts to state a claim for unjust enrichment at the motion to dismiss stage.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are hereby **DENIED.**

**IT IS SO ORDERED.**

                                                    s/Algenon L. Marbley
                                     **ALGENON L. MARBLEY**
                                     **CHIEF UNITED STATES DISTRICT JUDGE**


**DATE:  March 16, 2020**